# D. H. OVERMYER CO., INC., OF OHIO ET AL. *v.* FRICK CO.

No. 69-5.   Argued November 9, 1971—Decided February 24, 1972

BLACKMUN, J., delivered the opinion of the Court, in which all Members joined except POWELL and REHNQUIST, JJ., who took no part in the consideration or decision of the case. DOUGLAS, J.,

filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 188.

*Russell Morton Brown* argued the cause and filed a brief for petitioners.

*Gregory M. Harvey* argued the cause for respondent. With him on the brief was *James M. Tuschman.*

*Franklin A. Martens* filed a brief for the Ohio State Legal Services Assn. et al. as *amici curiae* urging reversal.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the issue of the constitutionality, under the Due Process Clause of the Fourteenth Amendment, of the cognovit note authorized by Ohio Rev. Code § 2323.13.[1]

---

[1] When the judgment challenged here was entered in 1968 the statute read:

"Sec. 2323.13. (A) An attorney who confesses judgment in a case, at the time of making such confession, must produce the warrant of attorney for making it to the court before which he makes the confession, which shall be in the county where the maker or any one of several makers resides or in the county where the maker or any one of several makers signed the warrant of attorney authorizing confession of judgment, any agreement to the contrary notwithstanding; and the original or a copy of the warrant shall be filed with the clerk.

"(B) The attorney who represents the judgment creditor shall include in the petition a statement setting forth to the best of his knowledge the last known address of the defendant.

"(C) Immediately upon entering any such judgment the court shall notify the defendant of the entry of the judgment by personal service or by registered or certified mail mailed to him at the address set forth in the petition."

Senate Bill No. 85, 133 Ohio Laws 196–198 (1969–1970), effective Sept. 16, 1970, amended paragraphs (A) and (C), in ways not pertinent here, and added paragraph (D):

"(D) A warrant of attorney to confess judgment contained in any promissory note, bond, security agreement, lease, contract, or other

The cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder.[2]  It was known at least as far back as Blackstone's time.  3 W. Blackstone, Commentaries *397.[3]  In a case applying Ohio law, it was

evidence of indebtedness executed on or after January 1, 1971, is invalid and the courts are without authority to render a judgment based upon such a warrant unless there appears on the instrument evidencing the indebtedness, directly above or below the signature of each maker, or other person authorizing the confession, in such type size or distinctive marking that it appears more clearly and conspicuously than anything else on the document:

" 'Warning—By signing this paper you give up your right to notice and court trial.  If you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you or your employer regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause.' "

[2] The Iowa Supreme Court succinctly has defined a cognovit as "the written authority of the debtor and his direction . . . to enter judgment against him as stated therein." Blott v. Blott, 227 Iowa 1108, 1111–1112, 290 N. W. 74, 76 (1940).

In Jones v. John Hancock Mutual Life Insurance Co., 289 F. Supp. 930, 935 (WD Mich. 1968), aff'd, 416 F. 2d 829 (CA6 1969), Judge Fox, in applying Ohio law, pertinently observed:

"A cognovit note is not an ordinary note.  It is indeed an extraordinary note which authorizes an attorney to confess judgment against the person or persons signing it.  It is written authority of a debtor and a direction by him for the entry of a judgment against him if the obligation set forth in the note is not paid when due.  Such a judgment may be taken by any person or any company holding the note, and it cuts off every defense which the maker of the note may otherwise have.  It likewise cuts off all rights of appeal from any judgment taken on it."

[3] Historical references appear in General Contract Purchase Corp. v. Max Keil Real Estate Co., 35 Del. 531, 532–533, 170 A. 797, 798 (1933), and First Nat. Bk. v. White, 220 Mo. 717, 728–732, 120 S. W. 36, 39–40 (1909).

said that the purpose of the cognovit is "to permit the note holder to obtain judgment without a trial of possible defenses which the signers of the notes might assert." *Hadden* v. *Rumsey Products, Inc.*, 196 F. 2d 92, 96 (CA2 1952). And long ago the cognovit method was described by the Chief Justice of New Jersey as "the loosest way of binding a man's property that ever was devised in any civilized country." *Alderman* v. *Diament*, 7 N. J. L. 197, 198 (1824). Mr. Dickens noted it with obvious disfavor. Pickwick Papers, c. 47. The cognovit has been the subject of comment, much of it critical.[4]

Statutory treatment varies widely. Some States specifically authorize the cognovit.[5] Others disallow it.[6]

---

[4] Recent Cases, Confession of Judgments—Refusal of New York State to Enforce Pennsylvania Cognovit Judgments, 74 Dick. L. Rev. 750 (1970); Note, Enforcement of Sister State's Cognovit Judgments, 16 Wayne L. Rev. 1181 (1970); H. Goodrich, Conflict of Laws § 73, p. 122 (4th ed. 1964); Hopson, Cognovit Judgments: An Ignored Problem of Due Process and Full Faith and Credit, 29 U. Chi. L. Rev. 111 (1961); Hunter, The Warrant of Attorney to Confess Judgment, 8 Ohio St. L. J. 1 (1941); Note, A Clash in Ohio?: Cognovit Notes and the Business Ethic of the UCC, 35 U. Cin. L. Rev. 470 (1966); Comment, The Effect of Full Faith and Credit on Cognovit Judgments, 42 U. Colo. L. Rev. 173 (1970); Comment, Confessions of Judgment: The Due Process Defects, 43 Temp. L. Q. 279 (1970); Comment, Cognovit Judgments and the Full Faith and Credit Clause, 50 B. U. L. Rev. 330 (1970); Comment, Cognovit Judgments: Some Constitutional Considerations, 70 Col. L. Rev. 1118 (1970); Note, Confessions of Judgment, 102 U. Pa. L. Rev. 524 (1954); Note, Foreign Courts May Deny Full Faith and Credit to Cognovit Judgments and Must Do So When Entered Pursuant to an Unlimited Warrant of Attorney, 56 Va. L. Rev. 554 (1970); Note, Should a Cognovit Judgment Validly Entered in One State be Recognized by a Sister State?, 30 Md. L. Rev. 350 (1970).

[5] Ill. Rev. Stat., c. 110, § 50; Mo. Rev. Stat. § 511.100; Ohio Rev. Code § 2323.13; Pa. Stat. Ann., Tit. 12, §§ 738 and 739 and Pa. Rules of Civil Procedure 2950–2976; S. D. Comp. Laws § 21–26–1.

[6] See, for example, Ala. Code, Tit. 20, § 16, and Tit. 62, § 248;

Some go so far as to make its employment a misdemeanor.[7] The majority, however, regulate its use and many prohibit the device in small loans and consumer sales.[8]

In Ohio the cognovit has long been recognized by both statute and court decision. 1 Chase's Statutes, c. 243, § 34 (1810); *Osborn* v. *Hawley,* 19 Ohio 130 (1850); *Marsden* v. *Soper,* 11 Ohio St. 503 (1860); *Watson* v. *Paine,* 25 Ohio St. 340 (1874); *Clements* v. *Hull,* 35 Ohio St. 141 (1878). The State's courts, however, give the instrument a strict and limited construction. See *Peoples Banking Co.* v. *Brumfield Hay & Grain Co.,* 172 Ohio St. 545, 548, 179 N. E. 2d 53, 55 (1961).

This Court apparently has decided only two cases concerning cognovit notes, and both have come here in a full faith and credit context. *National Exchange Bank* v. *Wiley,* 195 U. S. 257 (1904); *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287 (1890). See *American Surety Co.* v. *Baldwin,* 287 U. S. 156 (1932).

I

The argument that a provision of this kind is offensive to current notions of Fourteenth Amendment due process is, at first glance, an appealing one. However, here, as in nearly every case, facts are important. We state them chronologically:

1. Petitioners D. H. Overmyer Co., Inc., of Ohio, and D. H. Overmyer Co., Inc., of Kentucky, are segments of a warehousing enterprise that counsel at one point in

Ariz. Rev. Stat. Ann. §§ 6–629 and 44–143; Mass. Gen. Laws Ann., c. 231, § 13A.

[7] Ind. Ann. Stat. §§ 2–2904 and 2–2906; N. M. Stat. Ann. §§ 21–9–16 and 21–9–18; R. I. Gen. Laws Ann. §§ 19–25–24 and 19–25–36.

[8] See, for example, Conn. Gen. Stat. Rev. §§ 42–88 and 36–236; Mich. Comp. Laws §§ 600.2906 and 493.12, Mich. Stat. Ann. §§ 27A.-2906 and 23.667 (12); Minn. Stat. §§ 548.22, 168.71, and 56.12; N. J. Stat. Ann. § 2A:16–9.

the litigation described as having built "in three years . . . 180 warehouses in thirty states." The corporate structure is complex. Because the identity and individuality of the respective corporate entities are not relevant here, we refer to the enterprise in the aggregate as "Overmyer."

2. In 1966 a corporation, which then was or at a later date became an Overmyer affiliate, executed a contract with the respondent Frick Co. for the manufacture and installation by Frick, at a cost of $223,000, of an automatic refrigeration system in a warehouse under construction in Toledo, Ohio.

3. Overmyer fell behind in the progress payments due from it under the contract. By the end of September 1966 approximately $120,000 was overdue. Because of this delinquency, Frick stopped its work on October 10. Frick indicated to Overmyer, however, by letter on that date, its willingness to accept an offer from Overmyer to pay $35,000 in cash "provided the balance can be evidenced by interest-bearing judgment notes."

4. On November 3 Frick filed three mechanic's liens against the Toledo property for a total of $194,031, the amount of the contract price allegedly unpaid at that time.

5. The parties continued to negotiate. In January 1967 Frick, in accommodation, agreed to complete the work upon an immediate cash payment of 10% ($19,-403.10) and payment of the balance of $174,627.90 in 12 equal monthly installments with 6½% interest per annum. On February 17 Overmyer made the 10% payment and executed an installment note calling for 12 monthly payments of $15,498.23 each beginning March 1, 1967. This note contained no confession-of-judgment provision. It recited that it did not operate as a waiver of the mechanic's liens, but it also stated that Frick would forgo enforcement of those lien rights so long as there was no default under the note.

6. Frick resumed its work, completed it, and sent Overmyer a notice of completion. On March 17 Overmyer's vice president acknowledged in writing that the system had been "completed in a satisfactory manner" and that it was "accepted as per the contract conditions."

7. Subsequently, Overmyer requested additional time to make the installment payments. It also asked that Frick release the mechanic's liens against the Toledo property. Negotiations between the parties at that time finally resulted in an agreement in June 1967 that (a) Overmyer would execute a new note for the then-outstanding balance of $130,997 and calling for payment of that amount in 21 equal monthly installments of $6,891.85 each, beginning June 1, 1967, and ending in February 1969, two years after Frick's completion of the work (as contrasted with the $15,498.23 monthly installments ending February 1968 specified by the first note); (b) the interest rate would be 6% rather than 6½%; (c) Frick would release the three mechanic's liens; (d) Overmyer would execute second mortgages, with Frick as mortgagee, on property in Tampa and Louisville; and (e) Overmyer's new note would contain a confession-of-judgment clause. The new note, signed in Ohio by the two petitioners here, was delivered to Frick some months later by letter dated October 2, 1967, accompanied by five checks for the June through October payments. This letter was from Overmyer's general counsel to Frick's counsel. The second mortgages were executed and recorded, and the mechanic's liens were released. The note contained the following judgment clause:

> "The undersigned hereby authorize any attorney designated by the Holder hereof to appear in any court of record in the State of Ohio, and waive this issuance and service of process, and confess a judg-

ment against the undersigned in favor of the Holder of this Note, for the principal of this Note plus interest if the undersigned defaults in any payment of principal and interest and if said default shall continue for the period of fifteen (15) days."

8. On June 1, 1968, Overmyer ceased making the monthly payments under the new note and, asserting a breach by Frick of the original contract, proceeded to institute a diversity action against Frick in the United States District Court for the Southern District of New York. Overmyer sought damages in excess of $170,000 and a stay of all proceedings by Frick under the note. On July 5 Judge Frankel vacated an *ex parte* stay he had theretofore granted. On August 7 Judge Mansfield denied Overmyer's motion for reinstatement of the stay. He concluded, "Plaintiff has failed to show any likelihood that it will prevail upon the merits. On the contrary, extensive documentary evidence furnished by defendant indicates that the plaintiff's action lacks merit."

9. On July 12, without prior notice to Overmyer, Frick caused judgment to be entered against Overmyer (specifically against the two petitioners here) in the Common Pleas Court of Lucas County, Ohio. The judgment amount was the balance then remaining on the note, namely, $62,370, plus interest from May 1, 1968, and costs. This judgment was effected through the appearance of an Ohio attorney on behalf of the defendants (petitioners here) in that Ohio action. His appearance was "by virtue of the warrant of attorney" in the second note. The lawyer waived the issuance and service of process and confessed the judgment. This attorney was not known to Overmyer, had not been retained by Overmyer, and had not communicated with the petitioners prior to the entry of the judgment.

10. As required by Ohio Rev. Code § 2323.13 (C), the clerk of the state court, on July 16, mailed notices of the entry of the judgment on the cognovit note to Overmyer at addresses in New York, Ohio, and Kentucky.

11. On July 22 Overmyer, by counsel, filed in the Ohio court motions to stay execution and for a new trial. The latter motion referred to "[i]rregularity in the proceedings of the prevailing party and of the court . . . ." On August 6, Overmyer filed a motion to vacate judgment and tendered an answer and counterclaim alleging breach of contract by Frick, and damages. A hearing was held. Both sides submitted affidavits. Those submitted by Overmyer asserted lack of notice before judgment and alleged a breach of contract by Frick. A copy of Judge Mansfield's findings, conclusions, and opinion was placed in the record. On November 16 the court overruled each motion.

12. Overmyer appealed to the Court of Appeals for Lucas County, Ohio, specifically asserting deprivation of due process violative of the Ohio and Federal Constitutions. That court affirmed with a brief journal entry.

13. The Supreme Court of Ohio "sua sponte dismisse[d] the appeal for the reason that no substantial constitutional question exists herein."

We granted certiorari. 401 U. S. 992 (1971).

## II

This chronology clearly reveals that Overmyer's situation, of which it now complains, is one brought about largely by its own misfortune and failure or inability to pay. The initial agreement between Overmyer and Frick was a routine construction subcontract. Frick agreed to do the work and Overmyer agreed to pay a designated amount for that work by progress payments at specified times. This contract was not accompanied by any promissory note.

Overmyer then became delinquent in its payments. Frick naturally refrained from further work. This impasse was resolved by the February 1967 post-contract arrangement, pursuant to which Overmyer made an immediate partial payment in cash and issued its installment note for the balance. Although Frick had suggested a confession-of-judgment clause, the note as executed and delivered contained no provision of that kind.

Frick completed its work and Overmyer accepted the work as satisfactory. Thereafter Overmyer again asked for relief. At this time counsel for each side participated in the negotiations. The first note was replaced by the second. The latter contained the confession-of-judgment provision Overmyer now finds so offensive. However, in exchange for that provision and for its execution of the second mortgages, Overmyer received benefit and consideration in the form of (a) Frick's release of the three mechanic's liens, (b) reduction in the amount of the monthly payment, (c) further time in which the total amount was to be paid, and (d) reduction of a half point in the interest rate.

Were we concerned here only with the validity of the June 1967 agreement under principles of contract law, that issue would be readily resolved. Obviously and undeniably, Overmyer's execution and delivery of the second note were for an adequate consideration and were the product of negotiations carried on by corporate parties with the advice of competent counsel.

More than mere contract law, however, is involved here.

### III

Petitioner Overmyer first asserts that the Ohio judgment is invalid because there was no personal service upon it, no voluntary appearance by it in Ohio, and no genuine appearance by an attorney on its behalf. Thus,

it is said, there was no personal jurisdiction over Overmyer in the Ohio proceeding. The petitioner invokes *Pennoyer* v. *Neff,* 95 U. S. 714, 732 (1878), and other cases decided here and by the Ohio courts enunciating accepted and long-established principles for *in personam* jurisdiction. *McDonald* v. *Mabee,* 243 U. S. 90, 91 (1917); *Vanderbilt* v. *Vanderbilt,* 354 U. S. 416, 418 (1957); *Sears* v. *Weimer,* 143 Ohio St. 312, 55 N. E. 2d 413 (1944); *Railroad Co.* v. *Goodman,* 57 Ohio St. 641, 50 N. E. 1132 (1897); *Cleveland Leader Printing Co.* v. *Green,* 52 Ohio St. 487, 491, 40 N. E. 201, 203 (1895).

It is further said that whether a defendant's appearance is voluntary is to be determined at the time of the court proceeding, not at a much earlier date when an agreement was signed; that an unauthorized appearance by an attorney on a defendant's behalf cannot confer jurisdiction; and that the lawyer who appeared in Ohio was not Overmyer's attorney in any sense of the word, but was only an agent of Frick.

The argument then proceeds to constitutional grounds. It is said that due process requires reasonable notice and an opportunity to be heard, citing *Boddie* v. *Connecticut,* 401 U. S. 371, 378 (1971). It is acknowledged, however, that the question here is in a context of "contract waiver, before suit has been filed, before any dispute has arisen" and "whereby a party gives up in advance his constitutional right to defend any suit by the other, to notice and an opportunity to be heard, no matter what defenses he may have, and to be represented by counsel of his own choice." [9] In other words, Overmyer's position here specifically is that it is "unconstitutional to waive in advance the right to present a defense in an action on the note." [10] It is conceded that in Ohio a court has the

---

[9] Brief for Petitioners 16.

[10] Tr. of Oral Arg. 17.

power to open the judgment upon a proper showing. *Bellows* v. *Bowlus,* 83 Ohio App. 90, 93, 82 N. E. 2d 429, 432 (1948). But it is claimed that such a move is discretionary and ordinarily will not be disturbed on appeal, and that it may not prevent execution before the debtor has notice, *Griffin* v. *Griffin,* 327 U. S. 220, 231–232 (1946). *Goldberg* v. *Kelly,* 397 U. S. 254 (1970), and *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337 (1969), are cited.

The due process rights to notice and hearing prior to a civil judgment are subject to waiver. In *National Equipment Rental, Ltd.* v. *Szukhent,* 375 U. S. 311 (1964), the Court observed:

> "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *Id.,* at 315–316.

And in *Boddie* v. *Connecticut, supra,* the Court acknowledged that "the hearing required by due process is subject to waiver." 401 U. S., at 378–379.

This, of course, parallels the recognition of waiver in the criminal context where personal liberty, rather than a property right, is involved. *Illinois* v. *Allen,* 397 U. S. 337, 342–343 (1970) (right to be present at trial); *Miranda* v. *Arizona,* 384 U. S. 436, 444 (1966) (rights to counsel and against compulsory self-incrimination); *Fay* v. *Noia,* 372 U. S. 391, 439 (1963) (habeas corpus); *Rogers* v. *United States,* 340 U. S. 367, 371 (1951) (right against compulsory self-incrimination).

Even if, for present purposes, we assume that the standard for waiver in a corporate-property-right case of this kind is the same standard applicable to waiver in a criminal proceeding, that is, that it be voluntary, knowing, and intelligently made, *Brady* v. *United States,* 397

U. S. 742, 748 (1970); *Miranda* v. *Arizona,* 384 U. S.,
at 444, or "an intentional relinquishment or abandon-
ment of a known right or privilege," *Johnson* v.
*Zerbst,* 304 U. S. 458, 464 (1938); *Fay* v. *Noia,* 372
U. S., at 439, and even if, as the Court has said in
the civil area, "[w]e do not presume acquiescence in the
loss of fundamental rights," *Ohio Bell Tel. Co.* v. *Public
Utilities Comm'n,* 301 U. S. 292, 307 (1937), that stand-
ard was fully satisfied here.

Overmyer is a corporation. Its corporate structure is
complicated. Its activities are widespread. As its coun-
sel in the Ohio post-judgment proceeding stated, it has
built many warehouses in many States and has been party
to "tens of thousands of contracts with many contrac-
tors." This is not a case of unequal bargaining power
or overreaching. The Overmyer-Frick agreement, from
the start, was not a contract of adhesion. There was no
refusal on Frick's part to deal with Overmyer unless
Overmyer agreed to a cognovit. The initial contract be-
tween the two corporations contained no confession-of-
judgment clause. When, later, the first installment note
from Overmyer came into being, it, too, contained no
provision of that kind. It was only after Frick's work
was completed and accepted by Overmyer, and when
Overmyer again became delinquent in its payments on
the matured claim and asked for further relief, that the
second note containing the clause was executed.

Overmyer does not contend here that it or its counsel
was not aware of the significance of the note and of the
cognovit provision. Indeed, it could not do so in the
light of the facts. Frick had suggested the provision in
October 1966, but the first note, readjusting the progress
payments, was executed without it. It appeared in the
second note delivered by Overmyer's own counsel in re-
turn for substantial benefits and consideration to Over-
myer. Particularly important, it would seem, was the

release of Frick's mechanic's liens, but there were, in addition, the monetary relief as to amount, time, and interest rate.

Overmyer may not have been able to predict with accuracy just how or when Frick would proceed under the confession clause if further default by Overmyer occurred, as it did, but this inability does not in itself militate against effective waiver. See *Brady* v. *United States,* 397 U. S., at 757; *McMann* v. *Richardson,* 397 U. S. 759, 772–773 (1970).

We therefore hold that Overmyer, in its execution and delivery to Frick of the second installment note containing the cognovit provision, voluntarily, intelligently, and knowingly waived the rights it otherwise possessed to prejudgment notice and hearing, and that it did so with full awareness of the legal consequences.

*Insurance Co.* v. *Morse,* 20 Wall. 445 (1874), affords no comfort to the petitioners. That case concerned the constitutional validity of a state statute that required a foreign insurance company, desiring to qualify in the State, to agree not to remove any suit against it to a federal court. The Court quite naturally struck down the statute, for it thwarted the authority vested by Congress in the federal courts and violated the Privileges and Immunities Clause.

*Myers* v. *Jenkins,* 63 Ohio St. 101, 120, 57 N. E. 1089, 1093 (1900), involving an insurance contract that called for adjustment of claims through the company alone and without resort to the courts, is similarly unhelpful.

## IV

Some concluding comments are in order:

1. Our holding necessarily means that a cognovit clause is not, *per se,* violative of Fourteenth Amendment due process. Overmyer could prevail here only if the clause were constitutionally invalid. The facts of this case, as

we observed above, are important, and those facts amply demonstrate that a cognovit provision may well serve a proper and useful purpose in the commercial world and at the same time not be vulnerable to constitutional attack.

2. Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

3. Overmyer, merely because of its execution of the cognovit note, is not rendered defenseless. It concedes that in Ohio the judgment court may vacate its judgment upon a showing of a valid defense and, indeed, Overmyer had a post-judgment hearing in the Ohio court. If there were defenses such as prior payment or mistaken identity, those defenses could be asserted. And there is nothing we see that prevented Overmyer from pursuing its breach-of-contract claim against Frick in a proper forum. Here, again, that is precisely what Overmyer has attempted to do, thus far unsuccessfully, in the Southern District of New York.

The judgment is

*Affirmed.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, whom MR. JUSTICE MARSHALL joins, concurring.

I agree that the heavy burden against the waiver of constitutional rights, which applies even in civil matters, *Ohio Bell Tel. Co.* v. *Public Utilities Comm'n*, 301 U. S. 292, 307 (1937); *Aetna Ins. Co.* v. *Kennedy*, 301 U. S.

389, 393 (1937), has been effectively rebutted by the evidence presented in this record. Whatever procedural hardship the Ohio confession-of-judgment scheme worked upon the petitioners was voluntarily and understandingly self-inflicted through the arm's-length bargaining of these corporate parties.

I add a word concerning the contention that opening of confessed judgments in Ohio is merely discretionary and requires a higher burden of persuasion than is ordinarily imposed upon defendants. As I read the Ohio law of cognovit notes, trial judges have traditionally enjoyed wide discretion in vacating confessed judgments. 32 Ohio Jur. 2d, Judgments § 558 (1958). In *Livingstone* v. *Rebman,* 169 Ohio St. 109, 158 N. E. 2d 366 (1959), however, the Ohio Supreme Court imposed certain safeguards on the exercise of a judge's discretion in opening confessed judgments. That case also involved a petition to open a confessed judgment where, as here, the debtor alleged the affirmative defense of failure of consideration. Using the preponderance-of-the-evidence test, the trial court had found insufficient support for the debtor's claim and had dismissed the motion to open. On appeal, however, the Ohio Supreme Court reversed on the degree of proof needed to vacate a confessed judgment. Said the court:

> "[I]f there is credible evidence supporting the defense . . . from which reasonable minds may reach different conclusions, it is then the *duty* of the court to suspend the judgment and permit the issue raised by the pleadings to be tried by a jury or, if a jury is waived, by the court." *Id.,* at 121–122, 158 N. E. 2d, at 375. (Emphasis supplied.)

Thus it would appear that the Ohio confessed judgment may be opened if the debtor poses a jury question, that

is, if his evidence would have been sufficient to prevent a directed verdict against him. That standard is a minimal obstacle.*

The fact that a trial judge is *dutybound* to vacate judgments obtained through cognovit clauses where debtors present jury questions is a complete answer to the contention that unbridled discretion governs the disposition of petitions to vacate. See also *Goodyear* v. *Stone,* 169 Ohio St. 124, 158 N. E. 2d 376 (1959); *McMillen* v. *Willard Garage Inc.,* 14 Ohio App. 2d 112, 115, 237 N. E. 2d 155, 158 (1968); *Central National Bank of Cleveland* v. *Standard Loan & Finance,* 5 Ohio App. 2d 101, 104, 195 N. E. 2d 597, 600 (1964).

The record shows that the petitioners were given every opportunity after judgment to explain their affirmative defense to the state courts and that the defense was rejected solely because the evidence adduced in support thereof was too thin to warrant further presentation to a jury.

---

*Thus the Ohio system places no undue burden of proof upon the debtor desiring to open a confessed judgment, in marked contrast to the Pennsylvania procedure involved in *Swarb* v. *Lennox, post,* p. 191. In Pennsylvania, in order to vacate such a judgment, a borrower must prove his defense by the preponderance of the evidence rather than by merely mustering enough evidence to present a jury question. Once the judgment is vacated, moreover, he must again prevail by that standard at a subsequent trial. In effect, the Pennsylvania confessed debtor is required to win two consecutive trials, not simply one. Given the proclivities of reasonable men to differ over the probative value of jury questions, the Pennsylvania requirement of twice sustaining the preponderance of the evidence imposes a stiffer burden of persuasion.