Jesse A. **SANDOVAL** and Isabel J. Sandoval,
Appellants (Defendants below),

v.

**AMERICAN NATIONAL BANK OF POW-
ELL, Appellee (Plaintiff below).**

**No. 4234.**

Supreme Court of Wyoming.

Dec. 21, 1973.

Robert B. Denhardt and Steven M. Avery, Wind River Legal Services, Fort Washakie, for appellants.

Ross D. Copenhaver of Copenhaver & Castberg, Powell, for appellee.

Before PARKER, C. J., and McEWAN, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This was an action in which the defendants sought to set aside a default judgment,[1] and according to their brief the issue on appeal is whether or not they presented to the district court *a meritorious defense* or claim in the manner and degree necessary to meet the requirements

---

1. The parties assumed the judgment entered was in the nature of a default and their arguments were directed accordingly. At the pretrial conference where judgment was entered in favor of the bank the trial court ordered the answer of the defendant stricken. Although the judgment was more in the nature of a judgment on the pleadings or a summary judgment than a default, we have nonetheless essentially treated the matter as a default because the parties had considered it as a default proceeding. Under the circumstances of this case our result would have been the same whether considered as a default, judgment on the pleadings, or summary judgment.

to set aside a default judgment under Wyoming law and procedure.

Plaintiff was awarded judgment against the defendants for $17,295.46, and against the defendant Jesse Sandoval individually in the sum of $5,317.45, for money loaned to them by the plaintiff as evidenced by two notes signed by the defendants and one note and one security agreement signed by defendant Jesse Sandoval, who conducted a construction business. It was also decreed that the bank was entitled to the possession of two motor vehicles which had been delivered by writ of replevin. The filing of the complaint in May of 1972, and supplemental complaint, led the defendants to commence various discovery proceedings including inspection of the bank records by a certified public accountant. Extensions of time to complete discovery and postponement of the pretrial requested by defendants were granted. Defendants discharged their attorney and new counsel made an appearance. In December of 1972 judgment in favor of the bank was entered in which defendants were given leave to have the judgment set aside if they filed pleadings showing a meritorious claim or defense. After two extensions of time the defendants filed proposed answers and a motion in support of their contention of meritorious defense or claims. They argued that their proposed answers showed meritorious defenses for the reasons that both the Uniform Commercial Code and replevin statutes were unconstitutional, the defendant Isabel J. Sandoval was not a proper party-defendant, and the action should therefore have been dismissed as to her and the judgment amended accordingly.

The defendant argued that portions of the Wyoming Uniform Commercial Code, §§ 34–9–501, 503, and 504, W.S.1957 (1973 Cum.Supp.), were unconstitutional because they permitted taking the property without due process of law. In addition to the notes the defendant Jesse Sandoval signed combined security agreements and financing statements which were filed for record in the office of the Park County Clerk.

The plaintiff, by its complaint and pursuant to the terms of the security agreement, took possession of the secured property—being two automobiles—upon alleged default of the terms by the defendant. He made no argument that he was not in default under the terms of the agreement. He argued that portions of the Uniform Commercial Code were unconstitutional because they purport to permit the taking of property without due process of law. Defendant's argument is that these sections purport to authorize prejudgment remedies and, as such, constitute taking of property without prior notice and hearing thereby violating procedural due process. In support of his contention he cited Adams v. Egley, S.D.Cal., 338 F.Supp. 614, and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 1990, 32 L.Ed.2d 556, reh. den. 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165.

Here defendant Jesse Sandoval had been involved in continuing loan transactions with the bank from as early as 1964 up to the time of suit in 1972. During the almost eight-year period there were in excess of 50 different notes involved in their dealings, and at one time the defendants owed the bank in excess of $25,000. The bank's liability ledger sheets, as shown in plaintiff's answers to interrogatories propounded by the defendants, showed the notes were for various purposes including note extensions, operating advances, assignments, and equipment repair. Apparently most of the loans were made in regard to the operation of defendant's business. Since the defendant was involved in many transactions with the bank it would be reasonable to conclude that during the course of eight years and the many business transactions, including the execution of more than 50 notes, the defendant would have acquired some knowledge of the business world. He operated under the business name of Sandoval Construction, and it is not unreasonable to assume that he entered into various agreements and contracts in the course of his business. It could therefore be safely said that defendant was more akin to an experienced busi-

nessman than to one unskilled in such matters. For these reasons the facts in this case can be distinguished from those in *Fuentes*, supra. All of the applicable parties in the *Fuentes* case had purchased household goods under conditional sales contracts and they challenged the constitutionality of the prejudgment, summary, ex parte, replevin process. While the Supreme Court in that case held that even though the printed conditional sales contract form contained a purported waiver of judicial process, the seller could not retake the goods upon default of the buyer without affording the right to an opportunity to be heard before the chattels were taken from their possessor.

We believe the facts in this case were more like those in D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124, decided in the same term. There the parties were both in business and negotiated a business-type transaction. We think that is what happened here. This was a business transaction and the security agreements were but a small part of the overall transaction. The two vehicles covered under the financing statement were sold for $1,500, which sum was applied to defendants' debts secured by notes in excess of $24,000. No contention was made that the vehicles were not sold for a fair price or that defendants were not given proper credit on their debt.

▮ The financing statement here is somewhat different not only in form but in purpose from the conditional sales contracts in *Fuentes*. In that case there were sales, whereas here the secured party was not the seller but a lender and had loaned money to the debtor for the operation of his business, and as partial security for the loan took a mortgage (security interest) in collateral of the debtor. Under the terms of their agreement, as evidenced by the financing statement, the debtor agreed to keep the vehicles insured against the perils of fire, theft, and collision, with a loss payable clause in favor of the secured party-bank. The maintenance of insurance was a reasonable requirement and one which is customary where loans are secured by collateral which is subject to hazards. The debtor admittedly failed to maintain the required insurance. The agreement further provided that if the secured party-bank reasonably felt insecure or unsafe it could require the defendant-debtor to assemble the collateral at a designated place reasonably convenient to both parties, and upon default the secured party could take possession of the collateral without judicial process. The defendant-debtor admitted the secured party-bank asked that he deliver the automobiles to it but he did not do so. While it might be argued that the bank need only purchase insurance to protect its interest, it would seem unfair to require it to expend further sums which it could probably not recover from an already insolvent debtor. We believe that under these circumstances the bank had the right to resort to reasonable self-help to obtain possession of the secured chattels to protect its interest because the defendant's actions materially affected the bank's security.

The defendant's contention that the replevin statutes, §§ 1–1000 through 1–1017, W.S.1957, were unconstitutional need not be considered because even if we were to hold for the defendants there would be no change in the result, and the statutes have been subsequently amended in such manner as to make the defendant's question moot. In his argument concerning meritorious defense he cited Elstermeyer v. City of Cheyenne, 57 Wyo. 421, 120 P.2d 599, as authority for the reasoning that if it is determined he had a meritorious defense consideration must then be given to whether the meritorious defense would produce a materially different result. He further states that "The effect of finding in Appellants' favor would be to reverse what was done as a result of the Writ, either the return of Appellants' property or the value thereof." The vehicles had already been sold by the bank for the total sum of $1,500, and the defendant made no argument that the amount received was not a

reasonable sum. Therefore, even if we were to hold in defendant's favor we would order the bank to do that which it has already done. Under the terms of the financing statement the bank's security interest in the property would extend to the proceeds, therefore the bank would keep the $1,500 received from the sale of the automobiles and apply it to the defendant's notes. That is exactly what the bank did.

The replevin statutes which were in effect when this case was tried were materially amended by the 1973 Legislature so that anything we might say about the old statutes would be meaningless as a guide to future transactions.

In the motion to dismiss as to defendant Isabel J. Sandoval, she alleged that her signature on the notes was procured by fraud in that an employee of the bank asked her to sign "some papers" which her husband wanted her to sign, but her husband, in fact, did not request that she sign the aforesaid notes. An examination of the notes in question reveals she originally signed one note on March 25, 1970, and on June 30, 1970 signed another extension of the same note which was again extended, and she signed another note dated January 18, 1971 and a further extension of this note on September 1, 1971.

 On January 18, 1971 she again signed a note which was different from the ones mentioned in the preceding paragraph, and on September 1, 1971 she signed an extension of that note. Action was brought by the bank on the two notes dated September 1, 1971 which were extensions of prior notes. The defendant, Isabel Sandoval, signed six notes bearing four different dates. In the absence of any contention or showing to the contrary, the notes would be deemed to have been signed on the dates indicated on the notes. She did not contend that fraud was committed upon her on at least four different occasions and it is inconceivable that she could reasonably make such an argument. If, as she alleges, she would not have signed the notes had she known that her husband did not want her to do so she would have had adequate time between March 25, 1970 and September 1, 1971 to determine his wishes. Mrs. Sandoval did not raise the issue of fraud until after the entry of the judgment which gave her leave to apply to the court to set aside the judgment provided there was a showing of a meritorious defense or claim in the manner and to the degree necessary to set aside a default judgment.

 The trial court was justified within its discretionary power to determine that the defendants had failed in their burden to show a meritorious defense or claim in the manner and to the degree necessary to meet the requirements to set aside a default judgment.

Affirmed.

PARKER, C. J., concurs in the result.

GUTHRIE, J., took no part in the consideration or decision of the case.