**BARCLAYS AMERICAN/BUSINESS CREDIT, INC., Plaintiff,**

v.

**Jan G. OTTERSTROM, Defendant.**

Civ. A. No. 86–291–JRR.

United States District Court,
D. Delaware.

Nov. 10, 1987.

Phebe S. Young of Bayard, Handelman & Murdoch, Wilmington, Del., for plaintiff.

William J. Cattie, III of Heckler & Cattie, Wilmington, Del., for defendant.

## OPINION

ROTH, District Judge.

The plaintiff in this case, Barclays American/Business Credit, Inc. (Barclays), is the assignee of an Investor Note, executed by the defendant Jan Otterstrom, an attorney practicing in Spokane, Washington. Barclays is seeking to collect on that note. Because the note contains a confession of judgment clause, this case is governed by Rule 7.2 of the Local Rules of Civil Practice for the United States District Court for the District of Delaware (L.R. 7.2). Local Rule 7.2 provides a method for entering and executing on judgments by confession after notice to the debtor and opportunity for the debtor to object and to present certain defenses, both as to the entry of and execution on the judgment. The local rule is based on the Delaware statute governing confessions of judgment, 10 *Del.C.* § 2306.

Otterstrom signed the Investor Note in connection with his purchase of one and one half shares of HCU Partnership (HCU),

a Delaware limited partnership. HCU had been created by a group in Pennsylvania to acquire hydrocarbon conversion processing equipment and then to lease that equipment to generate income for the partnership. The Investor Notes, executed by Otterstrom and the other limited partners, were to be used as collateral to secure a bank loan to cover the purchase cost of the equipment.

A general partner of HCU made a telephone call to Otterstrom about becoming a limited partner on December 30, 1983, one day before the deadline established for obtaining the minimum participation necessary to fund the partnership. Otterstrom alleges that he was assured by the HCU general partner that Otterstrom's commitment to invest would put the limited partnership over the minimum funding requirement. Otterstrom also contends that he was informed that a lessor had already been found for the equipment and that this lease would provide the funds necessary to pay off the Investor Notes so that the limited partners would not have to put up any of their own money.

The purchase of the HCU shares required a down payment of $3000 per unit, with a balance due per unit of $60,000. The terms of the Investor Note called for payment of the principal in five annual installments, commencing December 31, 1984, with interest on the outstanding balance to be paid quarterly, commencing April 15, 1984. Otterstrom was also told in the December 30 telephone call that the commission that would normally be paid on his purchase would be applied to his downpayment so that he would not have to make an actual out-of-pocket payment to get into the partnership.

As a result of the December 30, 1983 conversation, Otterstrom sent a telegram, stating his intention to purchase one and one-half shares of the HCU Partnership. HCU then sent Otterstrom documents, including the Investor Note, the Subscription Agreement, the Agreement of Limited Partnership of HCU Partnership, the HCU Partnership Offeree Questionnaire, and a Power of Attorney. Otterstrom acknowledges that he read the documents and then executed them. At the time he signed the documents, Otterstrom dated them "December 30, 1983." [1]

In the Offeree Questionnaire, Otterstrom noted that he was a senior partner in a Spokane, Washington, law firm and that he had investment experience in common stocks, options, commodities, real estate tax sheltered investments, and a non-registered securities offering, Western Strategic Minerals. He checked "Yes" in response to the question: "Do you believe that you have sufficient knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Partnership (which involves a substantial investment and substantial risks)?"

It is conspicuously noted on the face of the Subscription Agreement which Otterstrom executed that:

THE UNITS AND LIMITED PARTNERSHIP INTERESTS REFERRED TO HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 ("THE ACT") OR THE LAWS OF ANY STATE. LIMITED PARTNERSHIP INTERESTS ACQUIRED BY SUBSCRIBERS MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND SUCH STATE LAWS AS MAY BE APPLICABLE....

The Agreement further stated in Paragraph 4 that:

4. The undersigned understands that the Units(s) are not being registered under the Securities Act of 1933 (the "Act") or the laws of any other jurisdiction and are being offered and sold in reliance

---

1. Otterstrom's signatures on the Subscription Agreement and the Power of Attorney are notarized by "Cheryl A. Clements, Notary Public, Phila., Phila. Co." as of December 30, 1983. Ms. Clements stated in both acknowledgments that Otterstrom "personally" appeared before her. It is not clear, therefore, whether the documents were executed by defendant in Pennsylvania or in Spokane, Washington.

upon the exemption for private offerings. . . .

(c) The undersigned understands that the Partnership has no obligation or intention to register the Unit(s) for sale under the Act and therefore, the undersigned may be precluded from selling or otherwise disposing of his Unit(s) for an indefinite period of time or at any particular time. *The Partnership is not required to register or to make any exemption from registration available.*

(emphasis added).

As noted above, the Investor Note, by which Otterstrom paid for his HCU units, was intended, and did serve, as collateral for the bank loan which would be used to purchase the hydrocarbon conversation processing equipment for HCU. For this reason, to strengthen the attraction of the collateral to a prospective lender, the Investor Note contained the following language:

*Maker and each of them does hereby authorize and empower the prothonotary or clerk or any attorney of any court of record to appear for and to confess and enter a judgment or judgments against Maker* or any one of them, in favor of its successors and assigns, and any other holder hereof, for which this or a true copy hereof, shall be a sufficient warrant, for the above principal sum with interest as provide [sic] with fifteen (15%) percent thereof added for collection fees. . . .

This note may be sold, assigned, transferred, pledged, or hypothecated by Payee to any person or entity as collateral security for any such indebtedness of Payee. *In order to induce any lender to accept this Note as such security, Maker agrees that if any claims, counterclaims, defenses or offsets now exist or hereafter arise against Payee for any reason whatsoever, the same shall be made and asserted against Payee only and shall not apply against such lender or other assignee of this Note.* Maker consents to be sued in any court of competent jurisdiction, state or Federal, located in the State of Connecticut and/or the State of Delaware. . . .

This note shall be governed by and construed according to the laws of the State of Connecticut.[2]

(emphasis added).

Plaintiff Barclays agreed to lend the funds to HCU for the purchase of the equipment. On February 16, 1984, HCU and Barclays executed a General Loan and Security Agreement whereby Barclays lent $1,015,000 to HCU and received the Investor Notes as collateral.

Apparently during the following months Otterstrom became concerned about the viability of his investment in HCU. He began efforts to withdraw from the partnership and to persuade someone else to purchase his HCU units and, to take over liability on his Investor Note. Michael P. Kelly, another limited partner, agreed to take over Otterstrom's units and as of January 1, 1985, this was effected by assigning Otterstrom's interest in HCU to Kelly in return for Kelly delivering to HCU his promissory note for $90,000. Otterstrom expected that Kelly's note would be substituted for Otterstrom's as collateral with Barclays for the loan to HCU.

On July 31, 1985, if not earlier, Otterstrom sent copies of the transfer documents to Barclays. However, it is not clear from the record whether an actual attempt was made by HCU to have Barclays substitute Kelly's note for Otterstrom's.[3] In any event, when in October, 1985, Barclays notified the HCU partners of a default by HCU on the loan and when

---

**2.** The Investor Note, as originally executed by Otterstrom, provided for quarterly payments of principal, rather than annual; for consent to be sued in Pennsylvania and/or Delaware; and for the Note to be governed by and construed according to the laws of Pennsylvania. When Barclays, a Connecticut corporation, agreed to be the lender, the Investor Note was revised at Barclays' request. The revised Notes, as set out in the text of the Opinion, were sent to the limited partners for reexecution on February 16, 1984.

**3.** Kelly is presently in bankruptcy. Whether, in view of his financial position in early 1985, he would have been attractive to Barclays as a substitute for Otterstrom on the Investor Note, has not been established.

Otterstrom then replied that his interest in HCU had been assigned to Kelly, Barclays responded that Otterstrom's Investor Note, and his obligations thereunder, remained outstanding, despite the assignment of his partnership units, and was included in the collateral held by Barclays. Barclays has now initiated this action to enter and execute on the judgment by confession provided for in Otterstrom's Investor Note.

## I. Local Rule 7.2.

Local Rule 7.2 describes the procedure in diversity cases for entering and executing on a judgment for debt where the debtor has confessed judgment; that is, where he has waived his right to notice and an opportunity to be heard and has admitted the existence of the debt. Under L.R. 7.2, the holder of an instrument, containing a confession of judgment, can proceed to judgment on the underlying debt simply by filing the appropriate forms with the Clerk of the Court and by having notice given to the debtor, as provided in 10 *Del.C.* § 2306.

The holder initiates the process under Rule 7.2(A), which requires the filing with the Clerk of the Court of a statement specifying the total amount owed, including interest and fees, the original document in which the debtor authorized the confession of judgment, an affidavit (described in 10 *Del.C.* § 2306(c)) if the debtor is from outside Delaware, and a notice letter conforming to the requirements of 10 *Del.C.* § 2306(b).[4] The notice letter, which is described in Rule 7.2(D),[5] notifies the debtor that the creditor intends to obtain judgment against him in the District of Delaware. It also notifies him of his right under L.R. 7.2(D)(5) to object to the entry of judgment, in which case a hearing is scheduled. At the 7.2(D)(5) hearing, the sole issue is whether the debtor "understandingly" waived his rights to notice and a hearing. The holder of the note has the burden of showing the waiver was knowing.[6]

In this case, Barclays complied with the prescribed procedures, and Otterstrom was sent notice in accordance with L.R. 7.2(D) on June 30, 1986. Otterstrom filed a timely notice of objection, and a hearing was scheduled.

If the plaintiff meets its burden at this first hearing, the judgment becomes final and plaintiff becomes a judgment creditor. It must then obtain a writ of execution on the judgment, following the procedure outlined in L.R. 7.2(H).[7] This section of L.R.

4. 10 *Del.C.* § 2306(b) states:
    (b) A judgment by confession shall not be entered as a final judgment, effective in all respects as a judgment after trial, until the Prothonotary gives written notice to the defendant-obligor by certified mail, return receipt requested, of an opportunity for a judicial determination as to whether the defendant-obligor understandingly waived his right to notice and an opportunity to be heard prior to the entry of final judgment against him.

5. L.R. 7.2(D) states, in pertinent part:
    D. The notice letter required by [10 *Del.C.* § 2306(b)] shall be mailed by the plaintiff to each debtor by certified mail return receipt requested, together with a copy of the instrument authorizing confession of judgment and where applicable, a copy of the affidavit required by 10 *Del.C.* § 2306(c). An affidavit of mailing shall be filed by the plaintiff with the Clerk. The notice letter, on a form supplied by the Clerk, shall contain the following information:
    (1) [Amount of debt including interest and fees].
    (2) That the plaintiff alleges he has waived his rights to notice and hearing prior to the entry of the judgment against him.

(3) That the entry of such a court judgment will result in a lien against all his real estate....
    (4) That in default of payment in appropriate cases the Marshal may seize some portion of his wages for credit against the debt.
    (5) That he may file with the Court, giving an address for the Clerk of the Court, a notice that he objects to the entry of judgment by a date at least two weeks following the date on which the notice letter for the entry of judgment was mailed. When the notice of objection is filed, a hearing will be scheduled by the Court. At said hearing the plaintiff will be required to prove that the debtor has effectively waived his rights to notice and a hearing prior to the entry of judgment.
    (6) That the debtor is not required to object but if he fails to do so, judgment will be entered by default.

6. Under L.R. 7.2(G)(3), costs for this hearing are assessed against the non-prevailing party.

7. L.R. 7.2(H)(3) states in pertinent part, as follows:
    (H) The following procedure must be complied with prior to the issuance of the first writ of execution on a confessed judgment:

7.2 requires the plaintiff to file with the Clerk of the Court another notice letter which is mailed to the debtor. The L.R. 7.2(H)(3) notice letter must inform the debtor that judgment has been entered against him and that he may object to execution on the judgment. If the debtor does object, the a L.R. 7.2(H) hearing is held, at which the defendant may raise "any appropriate defense."

Otterstrom objected to the entry of judgment against him and also, in advance of the L.R. 7.2(D) hearing and subsequent notice of execution, he objected to execution on the judgment. Because Otterstrom resides in Spokane, Washington, he waived the L.R. 7.2(H)(3) notice requirement and both parties stipulated to holding the L.R. 7.2(D) and 7.2(H) hearings at the same time. In this way, Otterstrom would only be required to make one trip to Delaware. This stipulation was approved by the Court, and the hearings took place on April 24, 1987.

## II. L.R. 7.2(D)(5) Hearing.

■ At the initial phase of the combined hearing, the plaintiff introduced the original Investor Note, signed by Otterstrom, which contained the following language:

> Maker ... does hereby authorize and empower the prothonotary or clerk or any attorney of any court of record to appear for and to confess and enter a judgment or judgments against Maker ... in favor of its successors and assigns, and any other holder hereof, for which this, or a true copy hereof, shall be sufficient warrant, for the above principle sum with interest as above provide [sic] with fifteen (15%) percent thereof added for collection fees, and with the costs of suit, at any one or more times after this Note becomes due, with or without declaration filed, with release of all errors, and without stay of execution....

The plaintiff also introduced a copy of the agreement assigning HCU's rights in the note to Barclays as collateral for the loan which HCU was to use to buy the processing equipment. In addition to the assignment agreement, the Note itself was endorsed over to Barclays.

Otterstrom acknowledged at the hearing that he had read the Note before signing it and that he was able, as a practicing attorney, to understand the effect of the document. He also acknowledged that he never made any installment payment, the first of which had been due by December 31, 1984.

It is clear that the waiver of notice and hearing, contained in the investment note, was understood by Otterstrom and, therefore, constituted an effective waiver. His objections do not challenge the preliminary determination to be made in the L.R. 7.2(D) hearing of a knowing waiver. Otterstrom's objections are directed instead to defenses to the note itself. These will be

(1) The judgment creditor shall file the following with the Clerk:

(a) A notice directed to the Clerk requesting the particular execution writ, together with a form of that writ obtained from the Superior Court of the State of Delaware.

(b) A notice letter as required by 10 *Del.C.* § 2306(j) for each debtor against whom execution is requested.

(3) The notice letter required by paragraph H(1)(b) shall be mailed by the plaintiff to each debtor by certified mail, return receipt requested. An affidavit of mailing shall be filed with the Clerk. The notice letter, on a form supplied by the Clerk shall contain the following information:

(a) Judgment creditor has requested the United States District Court for the District of Delaware to issue a writ of execution against

him based on the confessed judgment entered on a certain date.

(c) That he may file with the Court, giving an address for the Clerk of the Court, a notice that he objects to the issuance of the execution process by a date at least two weeks following the date on which the notice letter for the issuance of the execution process was mailed. When the notice of objection is filed, a hearing will be scheduled by the Court. At said hearing the debtor may raise any appropriate defenses.

(d) That he is not required to object but if he fails to do so, a warning that the writ of execution sought by the judgment creditor and other subsequent writs may be issued [and his property could be seized or his wages attached]....

considered as a part of the second, L.R. 7.2(H) hearing. In connection with the L.R. 7.2(D) phase of this action, because we find that Otterstrom knowingly and voluntarily waived his rights to notice and a hearing prior to the entry of judgment, judgment will be entered in favor of the plaintiff on the investor note, and, pursuant to L.R. 7.2(G)(3), the costs of this phase of the hearing are assessed against Otterstrom.

### III. L.R. 7.2(H)(3)(c) Hearing.

■ At this second hearing, the debtor is permitted to raise "any appropriate defenses." Since Rule 7.2 is based on 10 *Del.C.* § 2306, we turn to that statute to determine what defenses are appropriately raised. Section 2306(j) specifies that, before the judgment is executed, the debtor may "present defenses of which he had no knowledge at the time he signed the instrument containing the warrant of attorney to confess judgment, or which arose subsequent to the signing of such instrument." We will use this standard to determine whether the four defenses that Otterstrom has raised are appropriate.[8] Those found to be appropriately raised will be considered on the merits.

### A. Confessions of Judgment Under Connecticut Law.

■ Otterstrom first argues that because under Connecticut law which, under the terms of the Investor Note, is the law by which the note will be governed and construed, there is no provision authorizing confessions of judgment by warrant of attorney, the confession of judgment provision is unenforceable. Otterstrom was apparently unaware of the Connecticut law on confessions of judgment, or the absence thereof, at the time he signed the note. We will, therefore, consider the merits of this defense.

Both parties agree that Connecticut law is silent on the subject of confessions of judgment. From this silence, however, they draw opposing inferences. Otterstrom argues that without specific statutory authorization, confessions of judgment are prohibited. Barclays, on the other hand, maintains that confessions of judgment are permitted unless specifically prohibited by statute or case law. We conclude that there is no prohibition against confessions of judgment in this type of action under Connecticut law, and we find that provision in the Investor Note to be enforceable.

First of all, at the L.R. 7.2(H) hearing, the debtor clearly has the burden not only of raising appropriate defenses but also of establishing those defenses by a preponderance of the evidence. The judgment has already been entered. To require at this stage in the proceedings that the judgment creditor disprove any defense that the debtor raises would be inconsistent with the language of L.R. 7.2(H)(3)(c), and with the purpose of L.R. 7.2 and 10 *Del.C.* § 2306. Unless, therefore, defendant can establish that, absent specific statutory provision or case law precedent, judgment by confession will not be permitted, and that no such enabling statute or case law exists in Connecticut, defendant has failed to meet his burden of proof.

Contrary to defendant's argument, judgment by confession was, in fact, recognized at common law. Judge Rodney, in his concurring opinion in *General Contract Purchase Corp. v. Max Keil Real Estate Co.*, 35 Del. 531, 170 A. 797 (1933) found confession by warrant of attorney to be directly traceable to common law and discussed the common law sources from which judgment by confession arose:

In 3 Blackstone, Commentaries, 397, it is said,

"It is very usual, in order to strengthen a creditor's security for the debtor to execute a warrant of attorney to some attorney named by the creditor empower-

---

8. Neither party has addressed in their briefs the issue of whether Otterstrom's defenses are appropriate. However, we will refer to the record presented, and particularly the affidavit of Otterstrom, to determine whether the debtor was aware, when he signed the investor note, of each defense he raises. Where there is any doubt in the record, we will assume that he was not aware of the defense and has not waived it.

ing him to confess a judgment in an action of debt to be brought by the creditor against the debtor for the specific sum due."

170 A. at 800.

The dangers and disadvantages attending judgments by confession caused certain statutes to be enacted in England, in 1882, requiring the execution of warrants of attorney to be made before a solicitor (10 Hals. Laws Eng. 394, Hailsham Ed., Vol. 10, page 208) and the filing of the warrant so that the practice was largely abandoned, or, as Lord Halsbury says (18 Laws Eng., page 190) "it was formerly common practice for the judgment to be entered up upon warrant of attorney to confess judgment, but that practice is now almost obsolete." Long before the practice became obsolete in England, it was in full flower in this state, based upon precisely the same common law authority that it had in England prior to its abandonment.

*Id.* at 801.

In the cited case [*General Contractors Purchase Corp., supra*] it was shown that the power and practice of an attorney of the Court to appear and confess judgment pursuant to a valid warrant of attorney therefor does not rest upon a statute, but upon ancient practice or custom and the common law.

*Rhoads v. Mitchell,* 43 Del. 343, 47 A.2d 174, 178 (1946).

That same common law tradition, which permitted judgment by confession in Delaware, was also recognized in Connecticut during the early years of this republic. *See Wright [Wight] v. Mott,* Kirby, 152 (Conn.1786) (Judgment upon a confession should express the particular debt or duty so that the judgment may bar a future demand for the same thing). *Curtice v.*

*Scovel,* 1 Root, 327 (Conn.1791) (Judgment by confession on a note for a sum that should thereafter become due by an award of arbitrators is void).

We find no reported decisions which indicated any further development of Connecticut case law on judgment by confession. However, neither do we find any Connecticut statute which precludes the utilization of this device, except in the specifically described situations of retail installment loans[9] and of small loans, under $5000.[10] *See* Nelson, *Credit Manual of Commercial Laws, 1987,* p. 23–17. These specific provisions barring certain judgments by confession would be superfluous if the Connecticut legislature viewed confessions of judgment to be generally banned unless statutorily authorized, as defendant asserts.

We conclude, therefore, that there is no bar under Connecticut law to a judgment by confession under the circumstances of the present case where it is not specifically precluded by Connecticut law, where the debtor understands the legal effect of his commitment, where the provision for judgment by confession was included to promote the acceptability of the note as collateral for a prospective lender, and where the debtor is given reasonable notice of an opportunity to object to entry of and execution on the judgment. *See D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972).

**B. Negotiability.**

■ Otterstrom's second defense is that the investor note is not negotiable because it incorporates a separate document by its terms and is not, therefore, unconditional. See 42a *Conn.Gen.Stat.* 3–104(1). This is

---

9. Title 42, section 88 of the Connecticut General Statutes, contained in Chapter 733, Retail Installment Sales Financing, states:

   *Confession of judgment provision invalid.* No provision for confession of judgment or power of attorney therefor, contained in any retail installment contract or contained in a separate agreement relating thereto, shall be valid or enforceable.

10. Title 36, Section 236 of the Connecticut General Statutes states in part:

   *Form of Security Restricted* [for small loans of not more than $5,000]. No licensee [those permitted to make small loans] shall take any confession of judgment or any power of attorney. . . .

a futile defense.[11] Even if the note were not negotiable, Otterstrom in the Investment Note, in order to induce any lender to accept that note as security, agreed that he would assert any defense to the Note, then existing or which might arise later, only against Payee HCU and not against the lender (Barclays) or other assignee of the Note. Because Otterstrom has agreed in this manner to shield any subsequent holder of the Investor Note from defenses he might have against the creditor, HCU, he in effect has voluntarily made any subsequent holder a holder in due course.

### C. Failure to Register the Partnership Unit As A Security.

■ Otterstrom's third defense to the execution of the confessed judgment is that the offering of the HCU Partnership units was a security that was not properly registered or exempted under the securities laws of the State of Washington. Consequently, he argues that the Investor Note is a contract arising from an illegal transaction and is unenforceable against him by HCU or its subsequent assignees.

Otterstrom claims that because Barclays is not a holder in due course, he can assert this defense against Barclays. It is difficult to follow defendant's securities law argument. Fortunately, however, it will not be necessary to try to piece together what Otterstrom is attempting to develop because, even if the defense is a valid one, Otterstrom cannot employ it against Barclays. First of all, as we point out above, Otterstrom has agreed to present any defense only against HCU and not against a subsequent holder, such as Barclays. Even if the Investor Note did not contain this provision, still Otterstrom could not assert this defense to prevent execution on a judgment by confession under L.R. 7.2(H) and 10 *Del.C* § 2306 because it is a defense of which Otterstrom had knowledge when he signed the Note, containing the confession of judgment.

Otterstrom acknowledges that he was aware when he signed the note that it was not registered in the State Washington. He argues, however, that he did not know that the note was not exempted from registration. We find no merit in this distinction. On the top of the first page of the Subscription Agreement, which Otterstrom signed, it states in capital letters that the limited partnership interests being offered were not registered in any state, and that the interests may not be sold by subscribers without obtaining either a registration statement or an opinion of counsel that no registration is required. In paragraph 4 of the Subscription Agreement, it again states that the units are not being registered and that the partnership is relying on the exemption for private offerings, which means that no filing of any kind was being made. Again, in subparagraph 4(c) it states: "The Partnership is not required to register the Units or Limited Partnership Interests or make any exemption from registration available," referring to efforts by subscribers to sell their units. This language clearly gave notice to Otterstrom at the time he signed the note of the existence of any defense based on failure to register or exempt the units. We find, therefore, that Otterstrom has waived this defense.

### D. Novation.

■ Otterstrom's final defense is that even if the note is enforceable by Barclays, there was a novation of the note so that Otterstrom is no longer liable under it. Since this asserted novation took place after he signed the note, Otterstrom has not waived this defense. We will consider it on its merits.

Otterstrom states in his affidavit that once he became aware of the problems with HCU, he contacted the general partners in order to extract himself from the deal. One of the limited partners, Michael Kelly, agreed to take Otterstrom's units and sub-

---

11. We will assume for the sake of this decision that the note is not negotiable, even though there is strong authority, under Comment 8 of 42a *Conn.Gen.Stat.* § 3–105, that it is negotiable in that the reference in the note to the security agreement appears to be mere recital of the existence of that other document rather than an indication that the holder must look to that document for the terms of payment.

stitute a new Investor Note for the note Otterstrom had signed. An agreement between Otterstrom and Kelly was to take effect January 1, 1985. Kelly apparently made a subsequent payment on the units, which Barclays did not refuse. Nevertheless, Barclays sent a notice to Otterstrom when the first installment of principal was due. Otterstrom responded by sending Barclays a copy of the agreement between him and Kelly. Barclays soon thereafter sent a notice of default to Otterstrom, despite his explanations and protestations that he was no longer liable for the units.

Barclays states that it never accepted or agreed to the substitution of Kelly for Otterstrom, that it did not, in fact, substitute Kelly's Investor Note for Otterstrom's and that it has consistently maintained that it holds Otterstrom accountable for the amount of the note.

The burden of establishing a valid novation rests with the proponent of the novation, in this case Otterstrom. *Tidewater Oil Co. v. Murphy Motors, Inc.*, 4 Conn.Cir. 160, 227 A.2d 443 (1967); *Berg v. Liberty Federal Savings & Loan Ass'n*, 428 A.2d 347 (Del.Super.1981). A novation requires the agreement of all parties, both to the new contract, and to the extinguishment of the old contract. In this case, in the face of Barclays' denial that it either accepted the new note or extinguished the old note, Otterstrom has not established the novation. Although he argues that Barclays approved of the novation by accepting payment from Kelly, that does not constitute the required express consent of the creditor. *Id.* at 349 (and cases cited therein). Furthermore, mere knowledge on Barclays part that Otterstrom had made an agreement with Kelly does not constitute express consent by Barclays. We conclude that Otterstrom's attempted novation was ineffective against Barclays and raises no defense to the execution of judgment.

## IV. Conclusion.

We find that Otterstrom's signature on the Investor Note was a voluntary and knowing waiver of his rights to notice and a hearing and that he validly confessed judgment on the Investor Note. The judgment will be entered against Otterstrom. Further, we find that no defense available to Otterstrom can prevent execution on the confessed judgment. The writ of execution will issue against the debtor, Otterstrom, with costs for the L.R. 7.2(D) and L.R. 7.2(H) hearings to be assessed against him.

An appropriate order will follow.