628 P.2d 1059

In the Matter of Adoption of a MALE CHILD, born July 5, 1975, in the State of Idaho.

Philip G. HIMMELBERGER and Irene U. Himmelberger, Appellants,

v.

Dudley Max ROBINSON and Adele Robinson, Respondents.

No. 13335.

Supreme Court of Idaho.

May 28, 1981.

Charles D. Coulter, Boise, for appellants.

Jay L. Webb, Boise, for respondents.

BAKES, Chief Justice.

This appeal concerns an attempt to revoke a consent for adoption given by the natural parents of an infant. A consent was signed in Utah on July 10, 1975, and filed with a petition for adoption in the Fourth Judicial District of Idaho on July 31, 1975. The consent contained a waiver of notice, and consequently, the natural parents received no notice of where the adoption was taking place or of the identity of the parties involved. Prior to entry of the final decree, but after filing of the petition, the natural parents apparently had a change of heart. However, not knowing the location of the adoption proceeding or identity of persons involved, the natural parents were confronted with a considerable barrier in any attempt to revoke their consent. Various communications eventually took place before and after the final decree which raise a factual question of whether a revocation ever occurred.

Sometime after discovering the identity of the attorneys involved, and the location of the court in which the adoption occurred, the natural parents filed a Rule 60(b) motion to set aside the adoption decree. They claimed primarily that the consent was invalid because it had been procured by duress, had been revoked, and also because they had not been given notice of the time and place for hearing, which denied them due process. The magistrate denied their motion to set aside the order of adoption. The natural parents appealed to the district court. The court reversed holding that an improper burden of proof had been placed upon the natural parents and remanded the case for further proceedings in the magistrate division. The natural parents then further appealed to this Court.

From the briefs filed in this case, it is unclear in what way the natural parents question the district court's decision. However, at oral argument the appellants identified the single issue which they raise as follows: Should the adoption decree be set aside as a matter of law because the natural parents were not given notice of the time and place of the hearing? The basic argument of appellants is that the right to revoke a consent for adoption, recognized by this Court in *Andersen v. Crapo* (*In the Matter of Andersen*), 99 Idaho 805, 589 P.2d 957 (1979), is meaningless unless the parents are given notice of the location of the proceedings and parties involved so that timely revocation might be made.

■ In *Andersen*, we recognized that the "due process rights of notice and hearing prior to civil judgment are subject to waiver." *Id.* at 815, 99 P.2d at 967; *D. H. Overmyer Co., Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972). When a consent and waiver of notice is signed, the natural parents indicate their intent and consent to terminate their relationship with and responsibility for the subject child without further notice to them. Such an action necessarily includes all the consequences which naturally flow from the consent and waiver. One consequence is that the waiver of notice may make it difficult to revoke the consent. Moreover, when viewed from the perspective that the parents have ostensibly severed all of their rights in the child, it cannot be said that the burden of attempting to revoke consent without knowledge of the location of the proceedings or the identity of the parties involved is a denial of due process. The burden is one which the parents have placed upon themselves. Anonymity is a vital facet of adoption proceedings which the adopting parents must have the right to preserve. On the basis of the record before us, appellants have not as a matter of law persuaded us that the magistrate erred in the disposition made by him.

■ Respondents assert on appeal that the district court in its appellate review of this matter erred in concluding that the magistrate improperly placed the burden of proof upon the natural parents. Since this matter is now before us on appeal, we make the same review which the district court made on appeal from the magistrate. The

general rule is that the party seeking to set aside a judgment pursuant to Rule 60(b) bears the burden of proving his right to relief. *Pullin v. City of Kimberly*, 100 Idaho 34, 592 P.2d 849 (1979); *see Lisher v. Krasselt*, 96 Idaho 854, 538 P.2d 783 (1975). The magistrate in the present case made the following conclusion of law:

"It was the petitioner's burden of proof to show the consent was given other than knowingly and voluntarily. There being no showing of undue duress, fraud, misrepresentation, or incapacity on the part of the petitioners, petitioners have failed to meet that burden of proof."

Although the district court on appeal recognized that the usual rule places the burden of proof on the moving party, it reversed the magistrate on the basis that *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), mandated a different result in this case. *Manzo* involved an action by a father to set aside a decree granting the adoption of his daughter by his former wife's new husband. The father had never executed a written consent and waiver of notice, as in this case, and had never been sent notice of the original adoption proceeding. He was therefore attacking the decree by way of a subsequent motion to set it aside. The adoption had been sought and granted not on the basis of parental consent, but rather on the statutorily permitted ground of non-support of the child.

In the original *Manzo* proceeding, the burden was on the party petitioning for adoption to prove non-support. The adoption was granted on the basis of an unrebutted affidavit of the mother alleging non-support by the father. In the subsequent action by the father, the burden was placed upon him to show the invalidity of the adoption decree. After a hearing, the motion to set aside was denied, and the father unsuccessfully appealed through the state courts. On appeal to the United States Supreme Court, the denial of the motion to set aside was reversed, the Supreme Court holding that (1) the failure to notify the father about the adoption pro-

ceedings denied him due process of law, and (2) the subsequent hearing on the motion did not cure the constitutional violation because the burden of proof had been shifted from the adoption petitioner to the natural father. In effect, the father had to be given the same chance the second time as he would have had the first time, had he received notice.

■ In the case at bar, the district court concluded that the adoptive parents had the burden of proving a valid consent, and that since the natural parents had not been sent notice of the adoption proceedings, it would violate *Manzo* to require the natural parents to prove in a later action that the consent was invalid. *Manzo*, however, is distinguishable because in that case there was no waiver of notice. By its terms, *Manzo* is inapplicable where the notice requirement has been fulfilled. As recognized earlier in this opinion, that requirement can be met by a signed waiver of notice, *Andersen v. Crapo, supra; D. H. Overmyer Co., Inc., of Ohio v. Frick Co., supra.*

■ The problem in this case is complicated by the fact that the waiver of notice, which is jurisdictional, and the grant of consent, which goes to the merits, are tied together in one document. In *Manzo*, the issues concerning notice and the merits were distinct. However, it is clear from *Manzo* that an analysis of the notice requirement is a prerequisite to reaching the issue of shifting the burden of proof as to the merits. Since the notice requirement in the case at bar was fulfilled by waiver, *Manzo* is not applicable, and the district court erred in reversing the decision of the magistrate. Since the findings of fact made by the magistrate are otherwise supported by the evidence, we also affirm the decision of the magistrate. The cause is remanded to the district court with directions to affirm the decision of the magistrate. Costs to respondents.

McFADDEN, BISTLINE and DONALDSON, JJ., concur.

BISTLINE, Justice, specially concurring.

The main feature distinguishing this case from *Matter of Andersen* is that here there was not any kind of a relationship between the natural parents and the adoptive parents. In *Andersen* all of the adoption negotiations were between the two acquainted couples; hence the Andersens knew who had their child and where they were.

The *Andersen* consents were facially valid, having been executed in writing before a proper officer, 99 Idaho at 810, 589 P.2d at 962, but they did not give, nor did the statute require, any indication of the court in which they would be used—nor did the consents on their face purport to be the general appearances and waivers of notice which the Idaho law says they are deemed to be.

Similarly, the Himmelberger consents were facially valid, and specifically stated to be waivers of notice. The name of the court in which they were to be used appeared thereon, but was folded out of sight at time of execution. There was a studied attempt to achieve mutual anonymity.

In this case, unlike *Andersen*, there was no exercise of the right of revocation "prior to the entry of a final order of adoption," 99 Idaho at 810, 589 P.2d at 962, which inferentially is the cutoff date judicially established in that case.

As pointed out in the opinion of the Court, the appellate district court incorrectly applied *Armstrong v. Manzo*. The consent being valid on its face, it was incumbent upon the Himmelbergers to allege and prove that it was invalid for reasons which would have to amount to fraud. There was no burden on the adoptive parents to either allege or in any manner place in issue and prove the validity of the consents. Unlike *Andersen*, the adoptive parents had no notice or knowledge of any revocation or claimed revocation. Hence there was no failure of due process. The trial court found against the claim of fraud.

The appellate district court should have affirmed the trial court. Here our review discloses no error on the part of the trial court. Accordingly, we merely reach the conclusion that the appellate district court erred in interfering with the trial court's determination—which we should either reinstate or direct to be affirmed.

The appeal brought here by the natural parents placed the entire case before us, with our function being primarily to make the same review of the trial court decision as was made by the appellate district court. We have done so, and found no error. A fortiori, the appellate district court erred in its decision, and we overturn that, also, only doing so incidental to our holding that the trial court decision should be affirmed.

SHEPARD, Justice, dissenting.

This cause originated in a relatively simple manner. Petitioners, Himmelberger, pursuant to I.R.C.P. 60(b), moved to set aside and vacate a judgment and decree of adoption entered by the magistrate court. Following the entry of findings of fact and conclusions of law, the magistrate court entered its order denying the motion. An appeal was taken to the district court. The district court entered its memorandum decision affirming in part and reversing in part and remanding the cause for further proceedings in the magistrate court. From that order of the district court the respondents Robinsons *did not appeal*, but the prevailing party, the petitioners Himmelbergers, did file their appeal to this Court. From that point on, the matter became exceedingly convoluted and complex.

I.R.C.P. 60(b) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, re-

leased, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

It is to be noted at the outset that the district court did not base its ruling on mistake, inadvertence, surprise or excusable neglect, but specifically held that any such issue had been abandoned.

Further, as noted by the district court in its opinion, no authority has been cited holding that a consent of the natural parents to an adoption does not suffice for considerations of both jurisdiction and due process. Indeed, as pointed out by the majority herein, in *Matter of Andersen*, 99 Idaho 805, 589 P.2d 957 (1979), has specifically held that the consent of the natural parent confers jurisdiction on the court and constitutes an appearance by the natural parents in the adoption proceeding. Hence, I see no error in the ruling of the magistrate court denying petitioners' Rule 60(b) motion insofar as lack of jurisdiction is concerned. Likewise, if the natural parents' execution of the consent to adoption constituted an appearance, the denial of the Rule 60(b) motion in the face of some assertion of lack of due process because of lack of notice was also correct.

It then appears to me that the only remaining basis for petitioners' Rule 60(b) motion lay in fraud. Here the trial court (magistrate) found an absence of any fraud in inducing petitioners Himmelberger to sign the consent to adoption. The district court specifically affirmed the findings of fact of the magistrate court. I would likewise affirm that finding of fact as being based on substantial and largely uncontroverted evidence. The facts appear to be substantially as follows. The Himmelbergers were and are residents of the Salt Lake City area. Both were and are employed. At the time of the hearings Mr. Himmelberger was a chief hearing officer for the Utah Department of Law Enforcement and Mrs. Himmelberger was the office manager of a large credit union. At the time of the hearings their gross income was in the vicinity of $20,000 to $25,000. They were the parents of one child approximately eleven years old. The marriage was evidently not particularly stable and the testimony indicates that Himmelberger abused his wife both physically and mentally.

In 1974, the marriage relationship further deteriorated when Mrs. Himmelberger again became pregnant. When it was later discovered that Mrs. Himmelberger was pregnant with triplets, the marriage seemed to totally disintegrate. Himmelberger was totally opposed to the addition of any children to the household based to some extent on financial considerations, but, as he personally testified, primarily because it would require a change in "lifestyle." A possible abortion was discussed. Also considered was a divorce with Mrs. Himmelberger returning to her native Germany with the children. Also considered was placing all of the triplets for adoption. That latter proposal was discussed with Mrs. Himmelberger's attending physician, who in turn referred her to a psychiatrist for consultation. She also discussed it with close friends, neighbors and an attorney.

As the time of birth neared, Mrs. Himmelberger decided that the only way to save her marriage was to give up some or all of the children for adoption. Her attending physician suggested that she contact one King, who was an attorney in Salt Lake City with some wide experience in adoption matters. She initiated contacts with King several times prior to her delivery of the three children. King in turn contacted Mrs. Robinson, a former employee of his who was residing in Boise, and advised her that there might be one or more of the triplets available for adoption. The Robinsons consulted Idaho counsel, who then made arrangements for adoption proceedings in Idaho. King specifically denied that he was acting as an attorney for either the Himmelbergers or the Robinsons, but that he was merely acting as a go-between to obtain the consent of the Himmelbergers

to the adoption of one or more of the triplets and to actually take physical custody of the child or children and pay a proportionate share of the medical and hospital expenses.

Thereafter Mrs. Himmelberger retained and consulted with a Salt Lake attorney. The three children were born July 5, 1975 in a Salt Lake City hospital. Thereafter Mrs. Himmelberger discussed at length the possible adoption of one or more of the triplets. In total before and after the birth she consulted with her attending physician, his office nurse, a psychiatrist, a psychologist, a social worker, the supervising nurse in the maternity ward, her husband, her mother-in-law and various friends and neighbors.

Shortly after the birth Mrs. Himmelberger contacted King by telephone and informed him that she had decided to keep the two female children and release the male child for adoption. On July 10, King went to the hospital with documents for the Himmelbergers' consent to adoption of the male child and their waiver of any appearance or notice of the adoption proceedings. The attending physician and a nurse were present at the time King presented the documents for the signature of the Himmelbergers. There is an absence of any evidence or inference of friend, misrepresentation or over-reaching in the record. The only apparent source of disagreement at that meeting was King's offer to pay a proportionate share of the hospital and medical expenses. Following the birth of the triplets Mrs. Himmelberger had undergone surgery for a tubal ligation to prevent future pregnancies. Mrs. Himmelberger's attending physician insisted that King pay all medical and hospital expenses then amounting to approximately $1,200. King did so.

Evidently, because of hospital regulations Mrs. Himmelberger was required to physically deliver the child to King outside the physical confines of the hospital. King took possession of the child and in turn delivered it to the Robinsons, who then returned to Idaho. At the time of the execution of the documents by the Himmelbergers, King had so folded the papers as to conceal the names of the prospective adoptive parents and the designation of the court wherein the adoption would be sought.

Based on the foregoing facts as established by the record, I find nothing which would sustain the contentions of the Himmelbergers regarding fraud, misrepresentation or over-reaching in securing the consent of the Himmelbergers to the adoption. To the contrary, all personnel have testified that they were highly supportive of Mrs. Himmelberger regardless of what decision she might make. None of that testimony is denied or controverted. Likewise, there is no denial that King adequately informed the Himmelbergers of the impact and results of their signature of the consent and waiver forms. Hence, there is a large distinction between the instant situation and the fact patterns of both *Andersen* and *Duncan v. Davis*, 94 Idaho 205, 485 P.2d 603 (1971).

Sometime thereafter Mr. Himmelberger evidently had a substantial change in attitude and he and his wife decided to seek recovery of the child. After consulting several attorneys they settled upon one, who contacted King and indicated that the Himmelbergers might want to attempt to recover the child which they had placed for adoption. King indicated that he thought the Himmelbergers should be dissuaded from such an attempt and that he would like to discuss the matter with the Himmelbergers. In the meantime the Robinsons and their counsel had filed a petition for adoption of the magistrate's division of the Fourth Judicial District Court in and for Ada County, State of Idaho. Both King and Idaho counsel for the Robinsons deny that King communicated any indication of a desire or attempt by the Himmelbergers to revoke their consent prior to the actual adoption proceedings in Idaho. A meeting took place between the Himmelbergers, their attorney and King on September 19, 1975. Forward circumstances determined that at that very time the proceedings on the adoption were taking place in court in Boise, Idaho.

Based on those facts, I find nothing to indicate the practice of fraud, either extrinsic or intrinsic, upon the Idaho court. Even assuming that under the above facts the Himmelbergers had decided to revoke their consent prior to September 19, there is no showing that such revocation was communicated to the Robinsons, to their counsel or to the Idaho court. Hence, assuming the continued vitality of *Andersen*, the case at bar is clearly distinguishable on the facts from *Andersen*.

In sum, then, it is my judgment that those facts placed before the magistrate court in support of Himmelbergers' I.R.C.P. 60(b) motion were insufficient to require a vacation of the judgment of adoption. It is my conclusion that the district court erred in its ruling regarding the burden of proof as having been placed on the petitioners. It is correct that the magistrate court held that the petitioners had not sustained their burden of proof. Without further discussion as to where that burden of proof belonged, it is sufficient to say that with the exception of the testimony of the Himmelbergers all remaining testimony came into the record at the instance of the Robinsons and was mostly by way of the deposition of witnesses. Hence, regardless of where the burden of proof correctly lay, the overwhelming amount of evidence was introduced on behalf of the Robinsons and if the burden of proof lay with them, it was amply carried by the Robinsons. I would further hold, although not discussed below or here, that in accordance with *Andersen* the Himmelbergers were estopped to attempt to revoke their consent to adoption.

All of the above, of course, does not reach the ultimate disposition of this case by the majority. It must be reiterated that it was the Himmelbergers who took an appeal from the decision of the district judge. No appeal was taken therefrom by the Robinsons. Although I agree with the ultimate dispositive action of this matter by the majority, it is worthy of note that no precedential authority therefor is cited. In effect, this Court sat both as a trier of fact and as the arbiter on appeal. It is indicative of how far this Court will go in certain cases

in order to achieve "justice." I can conceive of no other viable alternative but can only believe that the torturing of so many judicial precepts to reach a just result has become necessary because this Court has dismally failed in its duty and responsibility to announce a coherent body of law in the area of adoption and base that law on sound policy considerations.