KENNEDY, Justice
(dissenting).
Although I agree that the issue relating to the McCarran-Ferguson Act is not yet properly before this Court, I believe Clark did not agree to waive her constitutional right to a jury trial and to arbitrate her claims against BCBS. Based on this independent ground, I would grant Clark’s petition for a writ of mandamus and I would pretermit discussion of the McCarran Act issue.
Clark argues that no matter which law is applied, federal or state, arbitration should not be compelled because, she argues, she did not agree to arbitrate her claims against BCBS. In particular, Clark emphasizes the fact that she did not sign an agreement to arbitrate and argues that her silence with regard to the newsletter cannot be deemed as an acceptance of the arbitration clause. Clark argues that BCBS’s attempt to unilaterally amend her insurance contract to include an arbitration clause, by sending notice through the mail, contradicts current caselaw. Clark contends that any waiver of the right to trial by jury, which is guaranteed by the United States and Alabama Constitutions, must be clear and unequivocal.
It is for the courts to determine whether there is clear and unmistakable evidence of an agreement to arbitrate. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Alabama courts have emphasized that “any arbitration agreement is a waiver of a party’s right under Amendment VII of the United States Constitution to a trial by jury and, regardless of the federal courts’ policy favoring arbitration, we find nothing in the FAA that would permit such a waiver unless it is made knowingly, willingly, and voluntarily.” Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929 (Ala.1997).
“States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause ‘upon such grounds as exist at law or in equity for the revocation of any contract.’ 9 U.S.C. § 2.” Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
BCBS maintains that Clark must arbitrate her claims, based on Ex parte Rager, 712 So.2d 333 (Ala.1998), and Ex parte Dyess, 709 So.2d 447 (Ala.1997). In Rag-er, the plaintiff applied for a “hospital accident policy” with the insurer. The insurer approved the plaintiffs application and mailed him a copy of the policy. Attached to the policy was an endorsement that contained an arbitration clause. Later, when a dispute arose, the plaintiff argued that he should not be forced to arbitrate because the application did not mention arbitration and he did not sign the endorsement containing the arbitration provision. The policy included a clause that allowed the plaintiff to cancel the contract within 10 days, at no cost, if he did not approve of its terms. We held that, by not returning the policy, the plaintiff agreed to the terms, including the arbitration clause contained in the endorsement.
In this present case, after Clark had already applied for insurance and had been accepted as an insured, BCBS, in a newsletter, attempted to unilaterally amend the policy. This case is thus distinguishable *874 from Roger, where the arbitration clause was attached to the original policy from the outset; Clark’s original policy did not contain an arbitration clause. BCBS later, through the mailing of a newsletter and the subsequent mailing of a revised policy, attempted to add an arbitration clause to the already existing contract. Therefore, Roger is distinguishable.
In Dyess, supra, 709 So.2d 447, the plaintiffs, while test-driving an automobile belonging to an automobile dealer, were involved in an accident. The accident was caused by an unidentified driver. The plaintiffs sued the automobile dealer’s insurance company, under the uninsured-motorist provision of its policy. The policy contained an arbitration clause. We held that the plaintiffs could be compelled to arbitrate even though they were nonsigna-tories to the insurance contract because, in effect, the plaintiffs were claiming as third-party beneficiaries of the contract.
Dyess is distinguishable from this present case because Dyess involved third-party beneficiaries whose only means of recovery was through the contract between the original parties, which included an arbitration agreement. The holding of Dyess would not apply to this present case, where one of the parties to the original contract disputes the unilateral amendment of the contract to add an arbitration provision that she had not previously agreed to.
Moreover, I note that in Ex parte Beasley, 712 So.2d 338 (Ala.1998), the plaintiff was employed by a hospital. The hospital adopted a new employment policy that required employees to submit all employment claims to binding arbitration. Although the plaintiff was already employed with the hospital when the new policy was implemented, her continued employment was conditioned upon her acknowledging the receipt of the new employee handbook — an arbitration clause appeared in the body of that handbook. The plaintiff signed a form acknowledging that she had received the handbook. We held that the plaintiff had not agreed to arbitrate her claims.
The instant case is substantially similar to Beasley. Just as the hospital’s attempt to include an arbitration clause through the employee’s acknowledgment that she had received a new handbook with an arbitration clause in it failed, BCBS’s attempt to include an arbitration clause through the mailing of a newsletter must also fail. BCBS’s mailing of a revised contract containing an arbitration clause is no different from the hospital’s attempt to include an arbitration clause in the new employee handbook.
At oral argument, counsel for one of the amici curiae, conceded that the constitutional right to a jury trial in a civil case is generally waivable. However, he argued that the waiver of the right to trial by jury should not be easily inferred by the courts. Counsel argued that the court’s willingness to conclude that parties have, by accepting binding arbitration, waived their constitutional rights, cannot be reconciled with the protective attitude usually taken by the courts toward the waiver of constitutional rights in the criminal context. For example, when a criminal defendant decides to plead guilty, the trial court must undertake a factual inquiry to determine if the defendant is making the plea voluntarily with an understanding of the nature of the charge and of the consequences of the plea, including the defendant’s waiver of his right to trial by jury. Additionally, the criminal defendant must sign a form that clearly states that he is waiving his right to trial by jury.
Amicus counsel cited two United States Supreme Court cases regarding the waiver of rights in a civil context. In D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), a contractor that repeatedly failed to make payments that were due to a subcontractor for installation of a refrigeration system signed a cognovit in order to continue in the contractual relationship. “[A] cognovit is the ancient legal device by which the *875 debtor consents in advance to the holder’s obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor’s behalf, of an attorney designated by the holder.” 405 U.S. at 176, 92 S.Ct. 775.[7] The subcontractor, alleging that the contractor had again failed to make a payment, attempted to enforce the cognovit. In response, the contractor argued that it had been deprived of due process, specifically, notice and a hearing, prior to the entry of a judgment. The Supreme Court refused to' determine the appropriate standard for assessing the validity of waiver of due process in the civil context. It held, instead, that, even applying the standard of Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (a “voluntary!,] knowing, [and] intelligent” standard); or the standard of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (an “intentional relinquishment or abandonment of a known right” standard), the contractor had waived its due-process rights of notice and a hearing. The Court discussed the specific facts of the case, noting that it was not a case of unequal bargaining power, because the contractor had been party to “tens of thousands of contracts.” 405 U.S. at 186, 92 S.Ct. 775. The Court also concluded that it was not a contract of adhesion, because there was no refusal on the subcontractor’s part to deal with the contractor unless the contractor agreed to the cognovit. The Court emphasized that the contractor and its attorney were well aware of the significance of the cognovit. 485 U.S. at 186-87, 108 S.Ct. 950. Initially, the contractor did not sign the cognovit and it did so later only to preserve its business relationship with the subcontractor. The Court, in looking at the cognovit, emphasized that the contractor had received consideration for its waiver of rights under the cognovit. The Court stated, regarding the waiver of constitutional rights: “[0]ur holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.” 405 U.S. at 188, 92 S.Ct. 775.
In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), decided just a few months after Overmyer, the Court answered the question whether Florida and Pennsylvania’s prejudgment replevin procedures violated the Fourteenth Amendment’s guarantee that no State shall deprive any person of property without due process of law.[8] Margarita Fuentes purchased a gas stove, a stereo, and a service policy from Firestone Tire and Rubber Company under a conditional sales contract that required her to make monthly payments. As part of the sales contract, Fuentes was required to sign a form sales contact providing that “in the event of default of any payment or payments, Seller at its option may take back the merchandise.” 407 U.S. at 94, 92 S.Ct. 1983. After a dispute arose regarding the servicing of the stove, Fuentes refused to make her remaining payments. Firestone used Florida’s law to obtain a writ of re-plevin that allowed it to seize the goods the dispute related to. Fuentes sued in a federal court, arguing that the seizure had denied her of due process of law because the contract had allowed Firestone to obtain her property without giving her adequate notice or an opportunity to challenge the issuance of the writ. Firestone argued that Fuentes had waived her procedural rights by signing the sales agreement. The Court stated as follows:
“In D.H. Overmyer Co. v. Frick Co., 405 U.S. 174[, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) ], the Court recently outlined the considerations relevant to determination of a contractual waiver of due *876 process rights. Applying the standards governing waiver of constitutional rights in a criminal proceeding — although not holding that such standards must necessarily apply — the Court held that, on the particular facts of that case, the contractual waiver of due process rights was ‘voluntarily, intelligently, and knowingly’ made. Id., at 187[, 92 S.Ct. 775]. The contract in Overmyer was negotiated between two corporations; the waiver provision was specifically bargained for and drafted by their lawyers in the process of these negotiations. As the Court noted, it was ‘not a case of unequal bargaining power or overreaching. The Over-myer-Frick agreement, from the start, was not a contract of adhesion.’ Id., at 186[, 92 S.Ct. 775]. Both parties were ‘aware of the significance’ of the waiver provision. Ibid.
“The facts of the present cases are a far cry from those of Overmyer. There was no bargaining power over contractual terms between the parties who, in any event, were far from equal in bargaining power. The purported waiver provision was a printed part of a form sales contract and a necessary condition of the sale. The appellees made no showing whatever that the appellants were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights.
“The Court in Overmyer observed that ‘where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the [waiver] provision, other legal consequences may ensue.’ Id., at 188[, 92 S.Ct. 775]. Yet, as in Overmyer, there is no need in the present cases to canvass those consequences fully. For a waiver of constitutional rights in any context must, at the very least, be clear.... ”
Fuentes, 407 U.S. at 94-95, 92 S.Ct. 1983 (emphasis original).
The Supreme Court emphasized in Fuentes hat while the contract provided the seller with the right to repossess the stove, it did not specify that the repossession would be without notice and a hearing, and, therefore, that the contract did not waive Fuentes’s constitutional rights.
Although the Supreme Court in Over-myer and Fuentes did not set out a specific test for reviewing the question of a waiver of rights in a civil context, counsel in this present case have urged this Court to adopt a four-factor test set out in a recent law-review article. See Jean R. Sternlight, Rethinking the Constitutionality of the Supreme Court’s Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns, 72 Tul. L.Rev. 1 (1997). Professor Sternlight contends that the courts “have ... allowed themselves to be swayed by a mythical vision of consensual arbitration, rather than by reality.” 72 Tul. L.Rev. at 39. Based on the guidelines set out in Fuentes and Overmyer, Professor Sternlight suggests the following four factors for reviewing an arbitration agreement: (1) Was the agreement clear enough? (2) Was the agreement fraudulently procured? (3) Was the agreement entered into voluntarily? and (4) Was the agreement substantively unfair? 72 Tul. L.Rev. at 26-39.
The first factor — Was the agreement clear enough? — pertains to whether the agreement clearly states that the parties are waiving their right to a day in court. Professor Sternlight contends that “[although many courts have held that it is ‘obvious’ that one waives a jury trial by accepting arbitration, in this author’s experience even law students may be unaware that an acceptance of binding arbitration is a rejection of trial.” 72 Tul. L.Rev. at 27. Reviewing the agreement for clarity would also include addressing whether the arbitration clause itself is explained in confusing terms and whether the dispute was actually covered by the arbitration clause.
The second factor — Was the agreement fraudulently procured? — requires reviewing whether a person was induced by misrepresentations to sign the agreement. Professor Sternlight notes that courts have *877 been reluctant to hold company representatives liable for fraud for failing to thoroughly disclose the details of an arbitration clause, no matter how great the difference in knowledge or power between the parties.
With regard to the third factor — Was the agreement entered into voluntarily?— Professor Sternlight suggests that courts “often appear so taken with the myth of voluntary arbitration that they fail to look realistically at whether the protesting party actually had an option to reject the agreement.” 72 Tul. L.Rev. at 33.
As to the fourth factor — Was the agreement substantively unfair?' — Professor Sternlight notes that courts have been “somewhat more willing to void arbitration agreements for ... substantive unfairness.” 72 Tul. L.Rev. at 39. Professor Sternlight contends that it is often unclear whether the parties have knowingly exchanged their litigation rights for arbitration:
“Instead, often in these cases a large company may have used its superior knowledge and power to impose an arbitration clause providing the company with a dispute-resolution advantage consisting of biased arbitrators; the opportunity for substantial delay; in terms of geography or cost, a forum that is much more favorable for the opponent; limitations on discovery, damages, injunctive relief, opportunity to form class actions or appellate review; a shortening of the statute of limitations; or a one-sided agreement that requires one party to arbitrate all its claims but allows the other the chance to take certain claims to court.”
72 Tul. L.Rev. at 36-39.
Although I would stop short of adopting the test proffered by Professor Sternlight, I do believe that Clark did not agree to the arbitration provision BCBS attempted to include in her policy by unilateral amendment. Therefore, I respectfully dissent. Clark’s petition for a writ of mandamus should be granted and the trial court directed to vacate its order compelling arbitration of Clark’s claims against BCBS.
JOHNSTONE, J., concurs.

. Alabama disallows cognovits. Ala.Code 1975, § 8-9-11.

. The Florida case and the Pennsylvania case had similar claims. The Supreme Court focused on the facts in the Florida case.