Juanita B. DOMINGUEZ, Plaintiff,

v.

BCW, INC., a Delaware corporation doing business as Sunward Materials, et al., Defendants.

No. 98–1002–PHX–ROS.

United States District Court,
D. Arizona.

March 22, 2000.

Michael Rhodes Pruitt, Jackson, White, Gardner, Weech & Walker, Mesa, AZ, for Plaintiff.

Lisa Marie Coulter, Gregg Jay Tucek, Victoria Edna Lovato, Snell & Wilmer, Phoenix, AZ, for Defendants.

## ORDER

SILVER, District Judge.

## INTRODUCTION

Plaintiff filed a Complaint against her former employer, BCW, Inc., a Delaware corporation doing business as Sunward Materials ("Sunward"), and Jerry Shipman,[1] a member of its management (collectively "Defendants"), in the Maricopa Superior Court, alleging Title VII and Equal Pay Act violations based on race and gender. On June 2, 1998 Defendant[2] removed the case to the district court, and on July 29, 1999, Defendant filed a Motion for Summary Judgment and a Statement of Facts in Support of the Motion. On August 31, 1999, Plaintiff filed a Response and a Controverting and Separate Statement of Facts. Defendant filed a Reply on September 27, 1999. The parties stipulated to stay the discovery and a settlement conference until the Court rules on Defendant's Motion for Summary Judgment and the Court agreed by order entered September 23, 1999.[3]

The resolution of the Motion for Summary Judgment focuses on one issue whether Plaintiff's claims are precluded by the Agreement and Release (the "Agreement") she signed at the time of her termination from her employment with Defen-

---

1. "Shipman" refers to Defendant Shipman. Jerry Shipman's wife is also named as a Defendant, apparently as a member of the marital community.

2. "Defendant" refers to BCW, Inc. and/or Sunward Materials.

3. The issues the parties raise are adequately addressed in their briefs. Accordingly, the hearing which was set for February 25, 2000,

was vacated. *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.* 933 F.2d 724, 729 (9th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992); *and see United States v. Cheely,* 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992) (*"Lake* stands for the proposition that oral argument may be dispensed with in connection with dispositive motions where the issues are fully presented in the written submissions."), *aff'd,* 36 F.3d 1439 (9th Cir.1994).

dant. Defendant alleges that it is entitled to summary judgment, because "Plaintiff knowingly and voluntarily, as part of a severance agreement, signed a full waiver and release, thus waiving her right to assert her claims against Sunward." (Def.'s Mot. at 1.) Plaintiff disputes that she "knowingly and voluntarily give up her rights under Title VII and the Equal Pay Act" by signing the Agreement. (Pl.'s Mot. at 1.)

## FACTS

### A. The undisputed facts

The following facts are undisputed. Plaintiff is a woman of Mexican ancestry (Def.'s SOF Exh. C) She has less than a high school education and attended a medical secretary course at a community college in 1985 or 1986. (Pl.'s SOF ¶ 1.) Prior to commencing her employment with Sunward, Plaintiff held two clerical positions in other companies, cleaned houses, worked as a waitress and bartender, and was a cashier at a K-Mart store. *Id.* Plaintiff was hired by Sunward in March of 1996 as an order taker in the cement department. (Def.'s SOF ¶ 1.) Plaintiff's title eventually changed to "customer service representative" but her duties remained the same. (Def.'s SOF ¶ 1.) As a customer service representative, Plaintiff questioned her supervisor, Shipman, regarding why three people whom she was required to train were hired at a higher salary than she was making. (Pl.'s SOF ¶ 4.) Shortly thereafter, in the beginning of October 1997, Plaintiff was transferred to the aggregate department and started working as a dispatcher. (Def.'s SOF ¶ 2.) On October 20 or 21, 1997, one of her supervisors, John Crisci, informed Plaintiff that she was terminated as of October 20, 1997, (Pl.'s SOF ¶ 3), and gave her the Agreement and Release (the "Agreement") to sign. (Pl.'s SOF ¶ 4.) John Crisci told Plaintiff that she was required to sign the Agreement to receive severance pay. *Id.* Plaintiff was not represented by an attorney when she was terminated. (Pl.'s SOF;

Exh. 2 Aff. of Juanita Dominguez.) During Plaintiff's deposition, when questioned whether the Agreement was explained to her, Plaintiff related she had the following conversation with John Crisci when he gave her the Agreement

A. He told me it was a severance pay. I asked him what a severance pay was. He told me it was for the time I was there. And he explained how they figured out the—I asked him how they figured out the severance pay. I don't remember what he told me, but he told me how they figured it out.

Q. Okay.

A. And I said, well, what's all the paperwork? He says, well, he have [sic]—you have to sign to receive your severance—whatever—severance pay. And I said, okay. And he goes, so if you're going to take us to court or something. Well, it's a layoff. Why am I going to take you to court if it's a layoff?? He says, well, this is an example I'm going to give you. This I remember real clear because he says, well, you have 20 people 20 years and under, and we have 40 people—I mean 20 people 40 years and over. He says, you have a layoff, and they take—and they get rid of the 40—the 20 people that are older, you know, they have a case.

(Pl.'s Depo. at 37.) Plaintiff was given forty five days to return the Agreement. (Pl.'s SOF ¶ 7.) Plaintiff was not represented by an attorney (Pl.'s SOF; Exh. 2 Affid. of Juanita Dominguez), but she was neither encouraged nor discouraged from seeking the advice of an attorney. (Pl.'s Depo. at 39.) Plaintiff took the document home, read it, signed it, and returned it sometime on or about October 22, 1997. (Def.'s SOF ¶¶ 8–9.) Plaintiff returned the Agreement shortly after her termination and received $1,512.00 from Defendant as severance pay. (Def.'s SOF ¶ 9; Pl.'s Depo. at 35.) Plaintiff had never been laid off from a job before, nor had she been involved in a lawsuit, received severance pay, or been asked to sign a release of

claims prior to her termination by Defendant. (Pl.'s SOF ¶ 19.)

Several days after Plaintiff's termination, Defendant advertised in the Arizona Republic for a dispatcher in the aggregate department. (Compl. ¶ 14; Answr. ¶ 14.) On November 19, 1997, Plaintiff filed a charge of discrimination based on race and gender with the Equal Employment Opportunity Commission ("EEOC"), (Compl.¶ 15), and on February 8, 1998, she received a Right to Sue Letter. (Compl.¶ 16.) On May 4, 1998, Plaintiff commenced this action.

## B. The Agreement

The Agreement entered into between Plaintiff and Defendant consists of four pages with small but legible print and provides in part

Juanita Dominguez desires to release [BCW Inc.] from all claims and causes of action, if any, she may have arising from or relating to her employment or service or termination [by BCW Inc.]; and Juanita Dominguez and BCW Inc. desire to establish their respective rights and obligations for the future. Now, therefore, for and in consideration of the following mutual covenants and promises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Juanita Dominguez and BCW Inc. hereby agree:

1. *Termination.* Juanita Dominguez's employment with [Defendant] will terminate effective October 20, 1997. Juanita Dominguez acknowledges and agrees that ... BCW Inc. has agreed to pay her regular salary and earned vacation to the date of termination ... and that such payment is in full satisfaction of all wages and vacation owed her by [her employer] to the date of his [sic] termination.

2. *Severance Payment/Benefits.* **Severance Payment** BCW Inc. agrees to pay to Juanita Dominguez $1,512.00 within fifteen (15) days of the execution of this Agreement and Release provided that she has not revoked this Agreement and Release....

....

10. *Release.* Juanita Dominguez agrees to release, acquit and discharge and does hereby release, acquit and discharge [her employer] from any and all claims and from any and all causes of action against any of [her employer-companies] of any kind or character, whether now known or unknown, she may have against [her employer] including, but not limited to, any claim for salary, benefits, expenses, costs, damages, compensation, remuneration or wages; and all claims or causes of action arising from her employment, termination of employment, or any alleged discriminatory employment practices, including but not limited to any and all claims or causes of action arising under the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* and any and all claims or causes of action arising under any other federal, state or local laws pertaining to discrimination in employment or equal employment opportunity. This release also applies to any claims brought by any person or agency or class action under which Juanita Dominguez may have a right or benefit.

11. *No Admissions.* Juanita Dominguez expressly understands and agrees that the terms of this Agreement and Release are contractual and not merely recitals and that the agreements herein and consideration paid is to compromise doubtful and disputed claims, avoid litigation, and buy peace, and that no statement or consideration given shall be construed as an admission of liability by BCW Inc. and such liability being expressly denied. This Agreement and Release does not constitute evidence of unlawful conduct or wrongdoing by BCW Inc.

12. *Remedies.* Juanita Dominguez and BCW Inc. agree that, because damages at law for any breach or nonperformance of this Agreement and Release

by Juanita Dominguez, while recoverable, will be inadequate, this Agreement and Release may be enforced in equity by specific performance, injunction, accounting or otherwise.

13. *Enforcement of Agreement and Release.* No waiver or non-action with respect to any breach by the other party of any provision of this Agreement and Release, nor the waiver or nonfiction [sic] with respect to any breach of the provisions of similar agreements with other employees shall be construed to be a waiver of any succeeding breach of such provision, or as a waiver of the provision itself. Should any provisions hereof be held to be invalid or wholly or partially unenforceable, such provisions shall be revised and reduced in scope so as to be valid and enforceable.

. . . .

18. *ADEA Rights.* Juanita Dominguez acknowledges and agrees: (i) that she has at least forty five days to review this Agreement and Release; (ii) that she has been advised in writing to consult with an attorney regarding the terms of this Agreement and Release prior to executing this Agreement and Release; (iii) that, if she executes this Agreement and Release, then she has seven days following the execution of this Agreement and Release to revoke this Agreement and Release; (iv) that this Agreement and Release shall not become effective or enforceable until the revocation period has expired; (v) that she does not, by the terms of this Agreement and Release, waive claims or rights that may arise after the date she executes this Agreement and Release; (vi) that she is receiving, pursuant to this Agreement and Release, consideration in addition to anything of value to which she is already entitled; . . . .

(Def.'s SOF Exh. B; Pl.'s SOF Exh. 3.)

## LEGAL DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment may be granted if the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Three factors must be considered in deciding a motion for summary judgment (1) whether there is any dispute between the parties, (2) whether such dispute relates to the facts of the case, and (3) whether the factual dispute is material to the disposition of the case. The initial burden of identifying the elements of the claim in the pleadings, depositions, answers to interrogatories, affidavits, and other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact," is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If at trial the non-moving party will bear the burden of proof as to any essential element of its case, that party can withstand a motion for summary judgment only by demonstrating that a genuine issue of fact pertaining to such material element exists and that the dispute may be resolved only by the fact finder, because it might reasonably be resolved in favor of either party. *Celotex,* 477 U.S. at 321, 106 S.Ct. 2548. Courts must view the evidence in the light most favorable to the non-moving party and draw any reasonable inferences in the non-moving party's favor. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). Bare conclusory allegations unsupported by factual data, however, are insufficient to defeat a summary judgment motion. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, in the case at bar, the Court must decide whether there exists

any disputed issue of material fact regarding whether the Agreement executed by the parties released Plaintiff's possible claims against Defendant for gender and race discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.* and the Equal Pay Act, 29 U.S.C. § 206(a).

## B. What Constitutes a Valid Waiver of Claims Arising from Employment.

Where the rights of the litigants derive from a federal statute, federal law governs. *Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 459 (9th Cir.1989), *cert. denied,* 498 U.S. 854, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Hisel v. Upchurch,* 797 F.Supp. 1509, 1517 (D.Ariz.1992) (quoting *Jones v. Taber,* 648 F.2d 1201, 1203 (9th Cir.1981) "conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law[ ]"). It is well established that to constitute a valid waiver, the release of claims must be voluntary, deliberate and informed. *Stroman,* 884 F.2d at 462 (citations omitted). *See D.H. Overmyer Co., Inc. of Ohio v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), and *Fuentes v. Shevin,* 407 U.S. 67, 94–96, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (holding that the contractual waiver of any rights is valid only when the disclaiming party waived and released her rights of her own free will, fully understanding the consequences of the waiver).

■ *Stroman* is cited by both Plaintiff and Defendant in support of their respective positions. In that case, the plaintiff brought a Title VII action alleging race discrimination. Prior to commencing the suit, the plaintiff repeatedly asked his employer to be trained for a warehouse supervisor's position, was interviewed and denied the training on all occasions. *Stroman,* 884 F.2d at 460. Subsequently, he filed a discrimination charge with the

Washington State Human Rights Commission and with the EEOC. *Id.* Thereafter he filed another charge alleging retaliation for the first charge and one month later applied again for the position of supervisor but did not obtain it. *Id.* Later during the same year, the plaintiff asked to be placed on economic layoff in order to collect unemployment benefits. *Id.* The employer agreed subject to plaintiff signing a release agreement, which contained six simple sentences and provided that the agreement "represent[ed] a full and final settlement of any and all claims arising out of [plaintiff]'s employment with [the defendant]." *Id.* The Ninth Circuit held that the suit was barred by the terms of a release agreement entered into by plaintiff and defendant,[4] *id.* at 459. and summarized the legal standard as follows: "[t]he determination of whether a waiver of Title VII [claims] was voluntary, deliberate and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed." *Id.* at 462 (internal quotation marks and citation omitted). Relying on cases from other jurisdictions *Stroman* adopted the following criteria: 1) whether the release is voluntary depends on objective and subjective factors; 2) of primary importance is clarity and lack of ambiguity in the agreement; 3) also important is plaintiff's education and business experience; 4) whether there was a non-coercive atmosphere surrounding the execution of the agreement; and 5) whether the employee had the benefit of legal counsel. *Id.* at 462 (citations omitted). Under *Stroman,* whether a release is voluntary, deliberate and informed is a factual inquiry which must be determined on a case by case basis considering the totality of the circumstances surrounding the execution of the release. *Id.* Further, a valid release must be supported by consideration, i.e., something to which a party sign-

---

4. The dissent in *Stroman* agreed that "the economic layoff agreement was sufficient to waive Stroman's Title VII claims[,]" but disagreed that Stroman's waiver was knowing and voluntary, finding that the record did not "permit[ ] only one conclusion of this matter." 884 F.2d at 463 (Tang, J., dissenting).

ing the release does not have an absolute right already. *Salmeron v. United States,* 724 F.2d 1357, 1362 (9th Cir.1983) (citations omitted).[5]

## C. Whether Plaintiff's Execution of the Agreement was Voluntary, Deliberate, and Informed.

Plaintiff alleges she did not understand that by signing the Agreement she was giving away her right to pursue claims under Title VII and the Equal Pay Act, but rather understood that she needed to sign the Agreement in order to receive her last paycheck. Defendant alleges that the Agreement was explained to Plaintiff by John Crisci.

### 1. *Was the language and the structure of the Agreement clear and unambiguous.*

Under *Stroman,* the inquiry begins with a determination of whether the Agreement is clear and unambiguous. The first provision of the Agreement ("Section 1") addresses the payment of the last paycheck. Plaintiff was entitled to her last paycheck whether or not she signed the Agreement, but this is not clear from the language of the Agreement. Defendant does not allege that this was explained to Plaintiff. Section 1 states that Defendant *"has agreed* to pay [Plaintiff] regular salary and earned vacation to the date of termination ... and that such payment is in full satisfaction of all wages and vacation owed her by [Defendant] to the date of his [sic] termination." (Def.'s SOF Exh. B) (emphasis added). Placing this section in the beginning of the Agreement emphasizes this provision. Further, placing this section in the Agreement may have been misleading because it suggests that the final paycheck is a benefit of the Agreement rather than a payment to which Plaintiff was entitled regardless of the Agreement.

Whether it was is for a fact finder to decide.

The next provision of the Agreement ("Section 2"), setting forth the amount of the severance pay, does not explain that the severance is offered in exchange for Plaintiff's waiver of statutory rights to pursue potential legal claims. Nor is the waiver explained at any point close to Section 2 where the severance is set out. Rather, a single sentence and exceedingly verbose Section 10 of the Agreement, which lists the causes of action purported to be released, comes two pages and eight sections later. Its location within the structure of the Agreement and the sheer length of the sentence make it difficult to follow in the context of the entire document.

The lack of clarity resulting from its verbosity is not limited to Section 10. Other previously quoted sections of the Agreement are also not written clearly. Like Section 10, they are lengthy and contain legal terms which may be incomprehensible to a person without legal education. For example, Section 12 reads *"Remedies.* Juanita Dominguez and BCW Inc. agree that, because damages at law for any breach or nonperformance of this Agreement and Release by Juanita Dominguez, while recoverable, will be inadequate, this Agreement and Release may be enforced in equity by specific performance, injunction, accounting or otherwise." Whether a lay person can be reasonably expected to understand the meaning of Section 12 is a fact question. Similarly, Section 13 also includes legal terminology:

*Enforcement of Agreement and Release.* No waiver or non-action with respect to any breach by the other party of any provision of this Agreement and Release, *nor the waiver or nonfiction* [sic] with respect to *any breach* of the provisions of similar agreements with other

---

**5.** This element of the validity analysis is not relevant in the case at bar, because there are no allegations of insufficient consideration.

employees shall be construed to be a *waiver of any succeeding breach* of such provision, or as a waiver of the provision itself. Should any provisions hereof be held to be invalid or wholly or partially unenforceable, such provisions shall be revised and reduced in scope so as to be valid and enforceable.

(Def.'s SOF Exh B) (emphasis added). A jury may reasonably find that Section 13 is particularly obtuse to a person of Plaintiff's experience and education. Further, in the case at bar, the Agreement extends over four pages in small print. In contrast, in *Stroman,* the release agreement consisted of only six points, each containing one comprehensible short sentence.

Also, the explanation of the reason for the severance pay, provided by John Crisci to Plaintiff as set forth in her deposition,[6] gives only one, perhaps unintelligible, example of what claims were contemplated by the Agreement, that of age discrimination. Mr. Crisci did not explain to Plaintiff that she would be giving up other possible statutory rights, nor did he advise her that she was entitled to her last paycheck even if she decided not to sign the Agreement. Plaintiff questioned her supervisor in the matter of equal pay prior to her termination. (Pl.'s SOF ¶ 4.) Defendant, therefore, was aware of at least one potential claim that Plaintiff could possibly bring. If Defendant had specifically provided Plaintiff with an explanation that by signing the Agreement she was releasing any possible claim related to complaints of unequal pay, Plaintiff could not assert that her release was uninformed. This, however, did not occur.

Although listing potential causes of action in Section 10 provides sufficient clarity of what claims are waived in general terms, ensconcing this section in the lengthy Agreement preceded and followed by many legal and possibly ambiguous provisions may have detracted from the clari-

ty of the document. This is also for the jury to decide.

2. *Plaintiff's education and business experience.*

In contrast to the plaintiff in *Stroman,* Plaintiff in the instant case does not have a college degree. She did not graduate from high school, having left before completion of the eleventh grade, nor did she earn an equivalency diploma. (Pl.'s Resp. at 4.) Defendant alleges that Plaintiff's assertions regarding her lack of education and sophistication are "in stark contrast to the manner in which she has portrayed herself throughout this lawsuit—i.e. as a model employee who diligently and competently performed her job." (Def.'s Rpl. at 3 n. 2.) Her portrayal is a fact question for the jury to decide. Moreover, Plaintiff's lack of education or sophistication are not inconsistent with a diligent job performance. She did not hold a position requiring a college degree. Although she occasionally was asked to interpret Spanish for various departments of Defendant, whether these facts establish sufficient ability to understand the waiver is a jury question. The jury may conclude that Plaintiff was very diligent in performing her job related tasks and yet lacked sufficient education and experience to fully appreciate the legal ramifications of the Agreement she signed.

3. *Whether Plaintiff had an opportunity to consult an attorney.*

It is undisputed that Plaintiff did not consult with an attorney, though she had sufficient opportunity to consult with one. Plaintiff argues, however, that she did not understand why she needed an attorney. Moreover, she states she could not afford an attorney, which, if true, makes an opportunity to consult with one meaningless. Further, as discussed previously, because she thought she would not receive her last paycheck unless she signed the Agree-

---

**6.** Defendant does not controvert Plaintiff's report of the meeting with John Crisci provided

by her under oath during her deposition.

ment, she signed it and returned it promptly because she needed her paycheck.

4. *Whether a non-coercive atmosphere surrounded the execution of the Agreement.*

Plaintiff does not allege that Defendant pressured her to sign the Agreement and nothing in the record before the Court explicitly indicates that any coercion was attempted. However, a coercive environment may be created by implication when, as discussed above, Plaintiff thought that she would not get her last paycheck, unless she signed the Agreement. Whether coercive environment existed is for the jury to decide.

5. *Totality of the Circumstances.*

█ Applying the *Stroman* test to the undisputed facts of the case at bar, the Court concludes that Defendant is not entitled to summary judgment, because the record before the Court does not demonstrate as a matter of law that Plaintiff's signing of the Agreement constituted a voluntary, deliberate, and informed release. *Stroman,* 884 F.2d at 462. There are material issues of fact to be resolved by the jury regarding waiver.[7] Defendant's Motion for Summary Judgment will be denied.

Accordingly,

**IT IS ORDERED** that the hearing set for February 25, 2000 is vacated.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 28) is denied.

**IT IS FURTHER ORDERED** that the stay of discovery is vacated.

**IT IS FURTHER ORDERED** that the parties contact Magistrate Judge Verkamp for scheduling the settlement conference.

---

7. The parties also dispute whether Defendant's advertising for a new dispatcher constituted an attempt to replace Plaintiff or to hire a better qualified employee. This dispute is not material to the resolution of whether Plaintiff's signing of the Agreement was voluntary, deliberate, and informed.