REQUESTED BY: Alfonza Whitaker, Director Nebraska Equal Opportunity Commission
You requested our opinion as to whether a release signed by an employee, as a condition of receiving severance benefits, prohibits the employee from pursuing a pending charge under the Nebraska Fair Employment Practices Act. Additionally, you asked whether a valid release of Title VII claims requires consideration beyond those benefits to which the employee was already entitled.
In answer to your first question, if a release is valid, the employee is precluded from pursuing any pending claims, including those under the Nebraska Fair Employment Practices Act.
In answer to your second question, the courts look to contract law to determine if consideration was given. If there is no consideration, a release fails as a matter of contract. However, courts have increasingly determined that a release is valid in those cases where the employer, as a condition of the employee receiving a severance package, secures the release.
According to your request, you are investigating a number of charges against a company that has submitted signed releases as a response to pending charges under the Nebraska Fair Employment Practices Act. These releases were obtained pursuant to a union agreement, whereby the employee had to sign the release to obtain a severance package when the company was in the process of closing. You attached a copy of one of the signed releases.
There appears to be no Nebraska case on point, but the court inGernstein v. Lake, 259 Neb. 479 (2000), said that Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules.
In Stroman v. West Coast Grocery Company, 884 F.2d 458 (9th Cir. 1987), cert. denied 111 S.Ct. 151 (1990), the plaintiff brought a Title VII action alleging race discrimination. He filed suit with the Washington State Human Rights Commission and with the EEOC. While his action was pending, he asked to be put on economic layoff in order to collect unemployment benefits. The employer agreed to do this if the plaintiff agreed to sign a release. The plaintiff agreed and signed the release. The release was only six sentences and stated that the agreement represented a "full and final settlement of any and all claims" arising out of his employment. The court determined that the plaintiff's suit was barred by the terms of the release, finding that the plaintiff intended to waive all claims against his former employer, including those pending before the WSHRC and the EEOC. Id., at 461. In making its determination, the court stated that "a general release of Title VII claims does not ordinarily violate public policy. To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII." Id., at 460-461.
The court in Dominguez v. BCW, Inc., 99 F. Supp.2d 1155 (D.Ariz. 2000), used the evaluation put forth in Stroman to determine if the release was knowing and voluntary. In Stroman the court adopted the following criteria: 1) whether the release is voluntary depends on objective and subjective factors; 2) of primary importance is clarity and lack of ambiguity in the agreement; 3) also important are plaintiff's education and business experience; and 4) the court should consider whether the employee had the benefit of legal counsel. Id. at 462. Whether a release is voluntary, deliberate and informed is a factual inquiry which must be determined on a case-by-case basis considering the totality of the circumstances surrounding the execution of the release. Further, a valid release must be supported by consideration, i.e., something which the party signing the release does not have an absolute right to receive, absent the release. Id.
In McElroy v. Union Pacific Railroad Company, 961 F.2d 1397 (8th Cir. 1992), the court found that the separation agreement signed by the plaintiff did not release the employer from any and all claims against it. Here, the separation agreement contained no reference to any claims the plaintiff might have against Union Pacific, and it expressly required that Union Pacific give the plaintiff two months salary and benefits, and compensate him for unused vacation time in order for it to fulfill all its "obligations" to him. The court found that the term "obligations" could be interpreted as only including the plaintiff's rights to severance pay and benefits and, therefore, the release would not waive the employee's other claims against the company, such as his ADEA claim. See also Bernstein v. Consolidated Foods Corp., 622 F. Supp. 1096, 1106
(N.D.Ill. 1984) (summary judgment inappropriate in ADEA case where resignation agreements signed by plaintiffs referred only to remuneration and compensation but not to the plaintiff's suits or causes of action). The court distinguished this case from Lancaster, an earlier case where the waiver was found to be an unequivocal waiver of all the plaintiff's claims.
In Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539 (8th Cir. 1987), cert. denied 107 S.Ct. 3212 (1987), the court found that the termination agreement signed by the plaintiff barred his employment-related claims. The plaintiff argued that he did not knowingly and willingly release his employment-related claims. In determining whether the release was knowingly and willingly signed, the court applied ordinary contract principles. The court determined that the agreement was less than two typewritten pages, was written in clear and simple language, and unambiguously released all of his claims relating to termination of his employment. In making its decision, the court considered the following factors: the plaintiff had five days to read the agreement, there were no ultimatums or deadlines for its acceptance, the plaintiff had input into the terms of the agreement and the plaintiff was a management employee with business experience who had signed numerous contracts.
There are several things to consider in determining whether the former employees, in the case before the Commission, knowingly and willingly released their pending claims. The criteria put forth inStroman are useful. Courts appear to put much emphasis on education and experience, as well as on whether the release specifically discusses pending suits or causes of actions. In the instant case, there is a typed release of less than one page. Some of it is confusing, but it appears to be written in all-encompassing language in an attempt to secure an unequivocal release of all claims. The release does not specifically refer to pending lawsuits, but it does refer to "causes of action . . . may now have." Argument can be made that these releases were not knowing and voluntary, depending on the specific circumstances for each of the employees who had pending charges against the employer. It might be easy for an employee not to understand that a release of all claims in the pending charges was being made, especially if an attorney was not consulted. However, the employer did advise that an attorney be consulted. Other factors to consider are how the dollar figure was determined, whether the money was compensation for the job termination and unused vacation, and whether the employees had input in the drafting of the release. In the instant case, we know that the terms of the release were negotiated by the union on behalf of the employees. We know that courts have consistently held such releases to be valid, if knowingly signed by the employee.
Please note that Age Discrimination in Employment Act claims require specific language in a release. It is unclear as to exactly when a court will interpret a release of other Title VII claims to be valid under various sets of fact. It would appear that, based on current court interpretation of releases obtained under conditions such as in this case, the employees' pending lawsuits are precluded by the signed releases based on the all-encompassing language in the release. This conclusion is made without the benefit of any specific details on the individual circumstances of each employee who had a pending lawsuit.
 Sincerely, DON STENBERG
 Attorney General Delores N. Coe-Barbee Assistant Attorney General